"ELLEN PARK", Petitioner, *v.* "JOHN PARK", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, November 9, 1945.

"*Ellen Park*", petitioner in person.

"*John Park*", respondent in person.

PANKEN, J. I am aware of the law (N. Y. City Crim. Cts. Act, § 60) which presumably limits jurisdiction to require a father to support a child born out of wedlock to the Court of Special Sessions. That limitation, in my judgment, does not strip the Domestic Relations Court of the City of New York from jurisdiction in a proper case nor its power to provide for support of a child by its father.

Every statute must be construed in the light of common sense. When a statute reflects the force of common sense, that statute makes for greater justice; when a statute fails to reflect common sense, the statute is bad, the law that is enacted thereby, is bad. Bad laws have been enacted by Legislatures from time to time. Sometimes, the bad laws were repealed, and sometimes they die because of disuse and, hence, become obsolete.

Well, there is an issue. Where parents of children sought to be charged with their support, that is, and where the alleged father denies paternity, a sharp issue on that question arises; an element of criminality, as far as the father is concerned, may enter into the situation. Where, however, a father admits

* The opinion as here published substitutes fictitious names.

the paternity of the child for whose support he is sought to be charged, to require the mother of the child to proceed in a criminal court to enforce support for the child, or children, as the case may be, is harsh, indeed. It is harsh for the woman; moreover it exposes the children, if they are old enough, to heartache and deterioration affecting their morale, detrimentally.

In the light of new, and undoubtedly more desirable attitudes in relation to children, the child under the circumstances as above referred to, should be safeguarded against consequences which might follow as a result of branding them as illegitimate.

In my judgment, this court has the power to make provision for the support of children; particularly is that so when the question of paternity is not raised.

The act creating this court (N. Y. City Dom. Rel. Ct. Act, § 91, subd. [1]; L. 1933, ch. 482) provides that it is within its jurisdiction, " within the city to hear and determine all proceedings to compel the support of a wife, child or poor relative ". The Legislature, if it intended to limit this court to provide only for legitimate children, would have said, in specific language, " children, issue of the marriage ".

Section 92 of the Act, in the first subdivision, provides that the court shall have power " To order support of the wife or child or both * * *." That subdivision might be interpreted to limit the court for the support of a wife and her child, the implication being that the child is the legitimate issue of the marriage which created the conventional relationship of husband and wife. However, subdivision (2) of the same section provides among the powers conferred upon the court, " To include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, the expense of *educating his child*, the payment of funeral expenses, and other proper and reasonable expenses." (Italics supplied.) Here, again, the Legislature made no distinction between a legitimate child and an illegitimate child.

This court has expressed itself, I think, in strong terms in the case of *Dieterich* v. *Dieterich* (154 Misc. 714).

The Domestic Relations Court Act, creating the court, created two divisions: the Family Division of the court, and the Children's Division of the court. A construction of the act, and its provisions, must be on the basis of its being a unit, a whole. Under section 18 of article VI of the Constitution of the State of New York the Legislature was empowered to

create this court and the Children's Courts, generally, in the State of New York. The purpose of this court and the Children's Courts, throughout the State, is to protect children. Indeed, when children fall by the wayside, it becomes the duty, and the avowed purpose of the court, to rehabilitate such children.

To add to a child's disadvantage .the additional one of illegitimacy, is possibly to lay the basis for emotional upsets and instability, which are likely to result in maladjustments; moreover, it takes from the child that sense of security which legitimacy does give to a child, the sense of belonging, the sense of not being different from others. In many instances, insecurity follows the branding of a child with illegitimacy, and in the wake of insecurity, aggression comes; and aggression often is manifested in delinquent conduct.

To compel a mother to ask a court, which is created for the purpose of meting out justice, to stigmatize her child as illegitimate, runs counter to morals, to good sense, to common sense, and to what is right. To do so is to heap punishment upon the child, for what amounts to immorality, often misdeeds, sometimes on the part of the mother, as well as the father, and undoubtedly chicanery on the part of the father. This court will take jurisdiction in this case.