"Theresa McMaster", Petitioner, *v.* "John McMaster", Respondent.*

Domestic Relations Court of the City of New York, Family Court Division, Kings County, March 5, 1948.

*No appearance* for petitioner or respondent.

Panken, J. The parties before me are the father and the mother of three children, respectively aged five, three and two years. These children were born out of wedlock.

I should not under any circumstances regard these children as illegitimate. The term "illegitimate" applied to babies seems not only incongruous but utterly unwarranted of what is proper, decent and right. These children may be regarded as the offspring of an illegitimate relationship, meretricious in character. But it is not the fault of the children that the parents have embarked upon a meretricious relationship or an illegitimate consortium and certainly they are not to be stigmatized because of the acts of their parents. Children should not be held up to scorn because of the misconduct of their father and

* Names used herein are fictitious for the purposes of publication.

mother, and so I prefer to refer to these children as children born out of wedlock rather than refer to them as illegitimate children.

The Domestic Relations Court of the City of New York was created in response to an advanced socially minded attitude; if I may use that phrasing, an understanding of social attitudes. To refer to children born out of wedlock as illegitimate might have been in consonance with a social attitude of a bygone age, a dead age, never to be revived, never to be resuscitated, I hope. When the Domestic Relations Court was created, it was intended to be an instrumentality for and in protection of children, protection of them insofar as their support is concerned and protection insofar as their upbringing, and moreover, in protection of their future in consequence of proper development and proper guidance and supervision. The cognomen of illegitimacy applied to a child militates against proper development; it certainly is an impediment to the child when an attempt is made to accord him the kind of supervision and guidance necessary for proper development. I can visualize a child being called illegitimate by his fellows in the classroom or in the schoolyard or on the public street and the consequence of such an appellation to the child upon the child's emotional and spiritual life. That might result in the development of antisocial characteristics expressed in aggressions, referred to often as juvenile delinquency.

In consonance with moral requirements, social needs, and the rights and interests of the child, be it born out of wedlock or in wedlock, the responsibility imposed upon this court is such which does not permit discrimination between a legitimate and a so-called illegitimate child. The child is the ward of the court and it is the court's duty and responsibility to make such provision as is within its power to protect the child and to give to the child all of the benefits that the parents may be able to provide and the community may accord.

In the case of " Park " v. " Park " (186 Misc. 249) I had occasion to express my opinion as to the powers of this court. I reiterate what I have there said and add thereto that in this case both the petitioner and the respondent have been referred to this court by the Court of Special Sessions.

I have no quarrel with the law, with that statute which confers upon the Court of Special Sessions exclusive jurisdiction in cases where the paternity of a child is in issue and is to be made for a child born out of wedlock (N. Y. City Crim. Cts. Act, § 60), but where there is no issue between father and mother as to the paternity of the child, and the only problem

which is presented to the court is the amount that the father be required to contribute towards the support of the child or children as in this case, this court has jurisdiction. The parties before me agree that the father should support the children. The mother claims no support for herself. Shall I, as the representative of the community, the arbiter of the law and the dispenser of justice, tell these people, '' I will do nothing for you? I will send you to the Court of Special Sessions where it is to be inscribed insofar as the children are concerned that they are illegitimate; and the mother will have to appear in a criminal proceeding against the father, charging him with a crime.'' That I do not think is fair nor is that, I think what the law requires. Law is instituted amongst man for one purpose only, to see to it that men act justly toward one another, that justice be meted out to all those who appeal to the law and invoke its aid; and justice in this case will not be served by referring these two people to the Court of Special Sessions where she is to admit that the children were born out of wedlock and where she must testify that her children are illegitimate.

Respondent agreed to contribute the sum of $22.50 weekly toward the support of his children. That is approximately $6 or $7 a week in excess of the amount which the representative of the Department of Welfare testified was a fair amount necessary for the maintenance of these three children. I think it speaks well for the father to make this extra allowance for the support of the children. The children not only need food and shelter and clothing but they also need some measure of supervision and guidance and care, nursing, etc., that the mother will have to supply. At the rate of $22.50 a week, the amount which he will contribute to the support of these children will be approximately $100 a month. That, in view of what has been testified to, would be sufficient to maintain this unit. The order of the court as consented to by respondent is that he contribute the sum of $22.50 weekly, first payment March 8, 1948.

It may be proper that the court express itself on another phase of the problem which is here presented. I am not unaware of the law that a child born out of wedlock can not take from his father — that is, a child born out of wedlock does not inherit anything from his father. He may inherit from the mother. That is one of the anomalies of a law which was inherited by this generation from generations that are long dead. That should be corrected by legislation, as has already been done by the States of California, Georgia, Mississippi, Nevada, Ohio, Oregon, Tennessee and Washington.

It would seem to me that until the children can fend for themselves, the father should be required to contribute to the support of these children as he is able. I am not using the term " according to his means " because his means are variable, and so, ability to provide for the children should be taken into consideration when the court requires the respondent to provide for them. The order as heretofore made is reiterated.