(92 Misc. Rep. 390)

### BARKER v. BARKER et al.

(Supreme Court, Equity Term, Kings County. March 8, 1915.) ·

1. BASTARDS ⬚3—PROCEEDINGS TO ESTABLISH LEGITIMACY—FINDINGS—PRESUMPTION.

Where one claimed as an "heir and descendant" of her paternal grandfather, and the jury found that claimant's mother was married to a man still living at the time of the mother's marriage with claimant's father, such a verdict, establishing only the fact of the prior ceremonial marriage, did not establish claimant's illegitimacy, since the presumption of the legitimacy of a child born in wedlock is so strong that it cannot be overthrown without directly proving every link in the chain of evidence destroying it, while in this case the mother might have been incapable of contracting the first marriage, or it might have been annulled or dissolved before the second.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. ⬚3.]

2. BASTARDS ⬚8—LEGITIMIZATION OF CHILD—STATUTE—PROCEEDINGS.

Code Civ. Proc. § 1745, authorizing the court, in an action to annul a marriage on the ground that a former husband or wife of one of the parties was living, to determine that a child of the marriage is the legitimate child of the innocent parent, in effect declares a status of legitimacy upon the child of a void marriage as to the parent without knowledge of his or her spouse's undissolved marriage, and the court may adjudge the fact, without regard to the manner in which the question is presented.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. § 12; Dec. Dig. ⬚8.]

3. WILLS ⬚533—CONSTRUCTION—TAKING PER STIRPES.

Where testator's will provided that he gave his executors all his estate, subject to all legacies, etc., in trust to receive the rents and profits and apply the same to the education and support of his two sons (naming them) during their lives, without the same being subject to alienation, that on their deaths the same should descend to their heirs and descendants, and, if none, then to testator's heirs at law, and that, in case of the death of either of the sons, then his share (one-half) of the income should be paid to his heirs until the death of the survivor of the two sons. *Held* that, to avoid the possibility that one-half the property would become alienable upon the death of one of his sons, testator had provided for payment of one-half the income to such son's heirs until the death of the survivor, to

---

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

keep the estate intact as long as possible, so that the interests of the two sons, as shown by the "(one-half)" was several, and not joint, and their descendants took the remainder per stirpes, and not per capita.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1147; Dec. Dig. ☞533.]

Action for partition by C. V. Barker against Frances E. Barker and others. Judgment for plaintiff.

See, also, 88 Misc. Rep. 300, 151 N. Y. S. 811.

Hirsh & Newman, of Brooklyn, for plaintiff.

Nash & Jones, of New York City (William A. Kirk, of New York City, of counsel), for defendant Maud Archer.

Andrew F. Van Thun, Jr., of Brooklyn, for defendants Clifford J. Barker and Ethel B. Miller.

Charles L. Craig, of New York City, for guardian ad litem of defendant Samuel P. Barker, Jr.

Robert H. Haskell, of New York City (Robert H. Elder, of New York City, of counsel), guardian ad litem of defendant Beatrice Arabelle Barker.

Frederick E. Barnard, for defendant Amelia A. Van Hoesen.

Isaac Lubin, of Brooklyn, for defendants Herman Rosenbluth, Nathan Levy, and Pauline May, as surviving executors.

BLACKMAR, J. This is an action for the partition of real property, and two questions are presented to the court for determination: First. Is the defendant infant Beatrice Arabelle Barker entitled to share in the property as an "heir and descendant" of her grandfather, Samuel P. Barker? And, second. Do the descendants of Samuel P. Barker and Charles Barker take the property per stirpes or per capita?

[1] The first question involves the legitimacy of the infant. Her parents went through a ceremonial marriage on the 28th day of June, 1897. Her father, now dead, was the son of Samuel P. Barker, and it is claimed that she is illegitimate, because at the time of the marriage of her parents her mother had another husband living, that therefore the marriage of her parents was void, and that she is not in the eye of the law a descendant of her father. The marriage between the parents was a ceremonial one, followed by conjugal cohabitation, and she was the fruit of the connection. Under these circumstances the presumption that she is legitimate is one of the strongest known to the law. It was found by the verdict of a jury on a framed issue in this case that on May 1, 1897, her mother married one Murtha, who was alive at the time of her marriage with the infant's father about two months later. The verdict established only the fact of the prior ceremonial marriage. This fact alone does not establish the illegitimacy of the infant. It must be shown, also, that both parties were competent to contract the prior marriage, and that the relation so created continued to exist when the second marriage took place. The presumption of legitimacy is so strong that it cannot be overthrown without directly proving every link in the chain of evidence which destroys the presumption, even though that involves establishing a negative. In this case it may be that the wife was incapable of contracting the

first marriage, and it may be that it was annulled or dissolved before the second was celebrated.

[2] But I have reached the conclusion that in any event the infant is not shown to be illegitimate. Section 1745 of the Code of Civil Procedure authorizes the court, in an action to annul a marriage on the ground that a former husband or wife of one of the parties was living, to determine that a child of the marriage is the legitimate child of the innocent parent. Legitimacy is a status created by the common law or by statute; and the Legislature has unlimited power to prescribe the conditions which call it into being. A court cannot by its judgment create a legal status which did not exist before, for that would be legislation. Legislative power prescribes rules of conduct, competency, and status for the future. Judicial power determines and adjudges past conduct and existing conditions and status. The Constitution separates the legislative from the judicial power, conferring one on the Legislature and the other on the courts. Although I cannot affirm that such a separation is absolute and complete, so that no shred of judicial power can be found in the Legislature and no shred of legislative power in the courts, yet a law should not be interpreted as conferring legislative power on the courts if it be capable of any other reasonable construction. Section 1745 can be interpreted as declaring a status of legitimacy upon the child of a void marriage as to the parent who had no knowledge of the prior marriage. The status then exists independent of the judgment which ascertains and declares it. When the Legislature authorized the courts to adjudge that the child of a void marriage, under certain conditions, was legitimate as to one of the parents, it performed the legislative act of declaring legitimacy, which exists by virtue of the lawmaking power before the judgment of the court which determines it, as well as after.

If the infant's father were now alive, he could maintain an action to annul the marriage with the infant's mother, and in such action the infant could be adjudged legitimate as to him; but now that he is dead, and the action can no longer be brought, it is asserted that she must remain branded as illegitimate, although the facts would require a judgment of legitimacy in an action brought by either father or mother in the lifetime of the other, or by the stranger, Murtha. This would be a strange case. She may be adjudged legitimate in an action brought by another, to which she is not a party; but in an action to which she is a party the court on the same facts cannot declare the same judgment. I cannot think that such is the law. Such rule would be so repugnant to every sense of justice and decency that I shall not assume that such was the intent of the Legislature in enacting section 1745 of the Code, when the words of the statute are capable of carrying the intent of declaring the innocent child legitimate as to the innocent parent without regard to the manner in which the question is presented to the court. I shall hold, until otherwise enlightened, that such section of the Code legitimates, as to the innocent parent, a child born of a marriage void because the other parent had a husband or wife living. This decision is not at variance with Baylis v. Baylis, 146 App. Div. 517, 131 N. Y. Supp. 671, and 207 N. Y. 446, 101 N. E.

176, for in that case it was found that the plaintiff was not ignorant of the former marriage of the defendant, and that therefore the case was not within the purview of the statute. In this case there is no evidence that the father knew of the former marriage of the wife, and therefore the presumption of legitimacy is not overcome.

[3] Second. Do the descendants of Samuel P. Barker and John A. G. Barker take the property per stirpes or per capita?

John A. G. Barker died leaving one son, the plaintiff; while Samuel P. Barker died leaving four children, the defendants Maud Archer, Clifford J. Barker, Ethel B. Miller, and Samuel P. Barker, Jr., and one granddaughter, the defendant Beatrice Arabelle Barker, the only daughter of a deceased son. If they take per stirpes, the plaintiff takes half, and the other named defendants one-fifth each. If they take per capita, the plaintiff and the five defendants each take one-sixth part. The clause of the will to be construed is as follows:

"I give, devise and bequeath unto my executrix and executors herein named all of my real and personal estate subject to and upon all the conditions and every one of the legacies and annuities herein mentioned and chargeable therewith and not to be sold or disposed of while my wife or daughters Frances Elizabeth or Kate Ella shall live. In trust to receive the rents and profits thereof and apply the same to the education, support and maintenance of my sons John A. G. Barker and Samuel P. Barker during their lives without the same being subject to alienation or disposal by them or either of them or their or either of their creditors. And on their deaths the same shall belong and descend (the real estate in fee) subject as aforesaid to their heirs and descendants and if none, then to my heirs at law, and in case of the death of either said John A. G. Barker or Samuel P. Barker, then his share (one-half) of the income or profits shall be paid to the heirs of such descendant until the death of the survivors of my said two sons—it being my will that the same shall remain in trust as aforesaid until the death of both of my said sons."

The provision is very blind, but after much pondering I have reached a result which I am pleased to say coincides with that reached, apparently with much greater ease, by Mr. Justice Benedict. When the testator died he left him surviving a widow, four daughters, and two sons. He made provision for his widow and daughters by way of annuities charged on his estate. It is obvious that, having so provided for his wife and daughters, he meant to devote the remainder of his property to his sons. To accomplish this purpose, and influenced also by the desire to keep the estate together in the interest of the annuitants, he gave all his property subject to the legacies and annuities, to the trustees—

"to receive the rents and profits thereof, and apply the same to the education, support and maintenance of my sons John A. G. Barker and Samuel P. Barker during their lives. * * * "

The remainder he disposed of as follows:

"And on their deaths the same shall belong and descend * * * to their heirs and descendants. * * * "

The context shows that the word "descendants" was used to limit the word "heirs" to the issue of his sons. But the testator, as he expressly states, was desirous of keeping the property in trust until the

death of both his sons, and the contingency of the death of one presented itself to his mind. What would happen then? His testamentary intent suggested the answer, and that was that one-half of the estate would immediately vest in the descendants of the son so dying; as to that half the trust would terminate, and half the property would become alienable, and the whole subject to sale in partition. This was contrary to his desire, and to avoid this result he provided that:

"In case of the death of either said John A. G. or Samuel P. *then his share* (one-half) of the income or profits shall be paid to the heirs of such descendant until the death of the survivor of my said two sons. * * * "

This method of keeping the estate intact as long as possible shows the testator's idea of what would, except for this provision, happen on the death of one of his sons. The descendants of the one first dying would have taken the title in fee to one-half the trust fund; but instead, for the purpose solely of keeping the estate intact, for which the existence of the annuities furnished a strong motive, they were given the income only until the death of the other son, and the enjoyment of the principal was postponed until that event. The words in parenthesis, "(one-half)," show the testator's conception that the interests of his two sons were several and not joint. The descendants of the two sons, therefore, take the remainder per stirpes, and not per capita.

I have passed on the requests to find presented by the guardian of the infant Samuel P. Barker, and have indicated my disposition of plaintiff's findings in the margin. Let plaintiff present a fair copy of findings to carry out the decision, and settle the same, and also the judgment, on notice.