"MARION BENTLEY", Petitioner, *v.* "ANTHONY BENTLEY", Respondent.

Domestic Relations Court of the City of New York, Family Court Division, Queens County, February 9, 1948.

No appearance for petitioner.

No appearance for respondent.

PANKEN, J. The respondent in this case may have a basis for appeal from the determination by the court, since the determination is against him. The facts as they have developed in this case present an almost insoluble problem, insofar as their final determination by the court. They are as follows: The petitioner is now twenty-one years of age. The marriage ceremony took place in the town of North Bedford, in the State of Connecticut. Her testimony discloses a woeful state of affairs. She and witnesses and the respondent represented to the authorities in the town of North Bedford, State of Connecticut, that she was eighteen years of age and pregnant. Both representations were wholly false. These representations were made in order to induce a waiver of laws of the State of Connecticut, which require a period of three days to elapse in order to effect a physical examination, to determine whether or not the parties to the projected marriage relationship are free of venereal disease or diseases. The man lied, and he was not much of a

man at that time either. He was only twenty years of age, and, from the present appearances, at that time less than an adolescent mentally, and certainly no more than an adolescent emotionally. Prior to the girl's reaching the age of eighteen, her mother, "Mrs. Mabel Ravella", as guardian ad litem, of the petitioner herein, instituted a proceeding to annul the marriage on the ground that the child had no capacity to get married, not having obtained the consent of the mother, and she not being of age; that is, the age as fixed by law to permit a marriage without consent, either of a judge of a court or that of the parents.

Marriages consummated before the legal age of consent are not void as a matter of law; they are voidable. Such marriages may be invalidated by a court of competent jurisdiction. In this case, a suit was instituted to declare the marriage invalid, as if it had never taken place at all, and on or about the 24th day of February, 1944, Mr. Justice CHARLES S. COLDEN, by final judgment, annulled the marriage.

Another anomaly arises. It is the testimony of the petitioner here that, on or about the 22d day of November, 1943, after an interlocutory decree had been entered in the aforesaid proceeding, before the Supreme Court, for the annulment of the marriage, to wit, on the 13th day of November, 1943, the parties before me repaired to a church and there had the pastor solemnize the marriage between them. No license had been issued by any authority or agency in the State of New York, permitting these two young people to be married, or permitting anyone to solemnize the marriage. The marriage referred to, which took place in November, 1943, was by a religious ceremony and, according to the testimony of the petitioner, the pastor had participated in that religious ceremony on the basis that a marriage already had been entered into between the parties, but not according to the rites of the church, of which they are members, or to which they adhere. He was told that the marriage between the respondent and the petitioner had not been annulled. Since the second so-called marriage, a child was born to the parties herein. That child was born on the 10th of May, 1947.

Subdivision 6 of section 101 of the New York City Domestic Relations Court Act creating this court, reads: "A child born of parents who at any time prior or subsequent to the birth of said child shall have entered into a ceremonial marriage shall be deemed the legitimate child of both parents for all purposes of this act regardless of the validity of such marriage." A

ceremonial marriage took place. The child, for all purposes, as provided for in this act, is legitimate, and the father is in law chargeable with the support and maintenance of that child, whether he is chargeable with the support and maintenance of the mother of the child or not.

I have had occasion to express myself in the case of " *Park* " v. " *Park* " (186 Misc. 249) upon the problem which often arises in this court, when application is made by a mother of a child born out of wedlock, for the support of said child, by the father thereof. The Court of Special Sessions of the City of New York has exclusive jurisdiction in such cases, except, it seems to me, in such cases where the parentage is not in dispute, and where the only question to be determined is the amount which the father of the child is able to contribute for the support and maintenance of his child.

A child, when born in wedlock, or out of wedlock, is a child and should be so regarded within the meaning of the law. This court has been created largely for the protection of children. I never could understand why a child born out of wedlock should be called illegitimate. If there is any illegitimacy connected with the birth of the child, it lies upon the shoulders of the parents and should rest there. The child is only the victim if it suffers by reason of the fact that the parents had not gone through a marriage ceremony.

In this case, I am constrained to find that the respondent and petitioner are no longer husband and wife. She was not eighteen when she had the priest of her church marry her. It is unpleasant for me to say it, but I must say that the priest was imposed upon. Had he known the circumstances in the case, he would not have been a party to this marriage. Accepting the word of the petitioner and the respondent that the marriage had not been annulled, he believed himself empowered to marry these people, according to the rites of his church.

It is not an unusual thing for young people to be both civilly and clerically married. When a civil marriage takes place, the church may thereafter confirm the civil marriage by its ceremony, and vice versa, although it is not necessary in either case to make the marriage valid and binding.

This child is entitled to support because there was a ceremonial marriage. What does support imply? One chargeable with support is not limited to merely providing food, clothing, and shelter, when a child is five or six months old, or ten months, or older. A child six, or eight, or ten months old, or a little

older, needs more than food and shelter and clothing. It needs supervision and guidance and care, and the father of the child required to give support is also required to provide that guidance and care, that nursing and education, commensurate with his financial ability. The charge against the father is limited by his means. This respondent is in a position to contribute the sum of $20 weekly for the support and maintenance of the child, even if the mother of the child benefits therefrom somewhat, as a result of the $20 payments, towards her support, since she has the care and practically is the servant to the child.

Section 1134 of the Civil Practice Act modified the law theretofore affecting the rights of a woman whose marriage to her husband has been annulled by a decree of the Supreme Court of the State of New York. Under the section referred to the Supreme Court of the State of New York, in a proper case, may require the erstwhile husband, though in law he was not her husband, since an annulment of a marriage is tantamount to a declaration that there never was a marriage between the parties, to provide for the needs of such person who had been married to him. My very erudite colleague, Mr. Justice SICHER, in an opinion reported in 174 Miscellaneous, 496, refers to section 1134 of the Civil Practice Act. He held the petitioner may have recourse to the Supreme Court for relief and in that I am in agreement with him. In my opinion the section cannot be invoked here on behalf of a woman whose marriage had been annulled. Under sections 91 and 92 of the Domestic Relations Court Act this court has jurisdiction only in a case where the woman is the wife of the respondent. This court has limited jurisdiction; its powers are only such as are granted by the Legislature. It may not, in a case of this character, resort to the use of equity.

Application may be made by the petitioner herein to the Supreme Court of the State of New York for a modification of the decree of annulment, so that the decree may provide for her support. It is noted that at the time the proceeding for an annulment was commenced by the mother of the petitioner herein, the latter was at that time less than eighteen years of age. It is questionable whether the finding by the court, making no provision for her maintenance and support, is binding upon her since she was never a party to the litigation, by reason of the fact that she was the party in interest. The real parties before the court at the time the annulment proceeding was instituted and brought to a conclusion were the mother of the petitioner and the respondent herein. The petitioner and respondent since

November, 1943, have lived together as man and wife. Both knew of the decree annulling their marriage. It was within the realm of possibility, and moreover within the realm of good common sense, for them to apply for a license to marry and become husband and wife according to the law of the land. That they did not do. It is unfortunate.

Common-law marriages are no longer recognized by the law of this State since April, 1933. It was within the power of the State Legislature to legalize common-law marriages, or not do so. Whether that is wise is a different question upon which I am not called to pass judgment.

Order made for $20 a week.