" CELIA  FERRARO ",  Petitioner,  *v.*  " RAYMOND  FERRARO ",
Respondent.*

Domestic Relations Court of the City of New York, Family Court, Kings County,
February 24, 1948.

* Names and other pertinent facts used herein are fictitious for the purposes
of publication.

*John T. S. Wade, Martin V. Callagy* and *Vincent Lo Lordo* (The Legal Aid Society) for petitioner.

*John C. Corbett* for respondent.

DELANY, J. This is a case without discovered precedent, insofar as it involves a marriage ceremony at which only one principal was personally present, and the other was represented by proxy.

The marriage relationship between petitioner and respondent was originally evidenced by a ceremony performed in Washington, D. C., on January 2, 1945, when respondent was a member of the armed forces of the United States and stationed without the territorial limits thereof. However, a marriage license had been issued by the Clerk of the District Court of the District of Columbia in accordance with the statutes relating to the issuance of such licenses. The proxy present and acting for and on behalf of respondent was petitioner's brother, authorized by a power of attorney duly executed by respondent on December 18, 1944. The ceremony was performed by NATHAN R. MARGOLD in his capacity as Justice of the United States District Court for the District of Columbia, and as such was an official duly authorized by statutes of the District of Columbia to perform marriage ceremonies. Petitioner was then already pregnant by respondent.

On March 2, 1945, petitioner gave birth to a child (Lorretta Mary Ferraro*). This fact is evidenced by a certificate of birth — Registration No. 9390* — issued by the Department of Health of the City of New York. The child was christened in the Church of Our Lady of Mount Carmel in Brooklyn, New York, on April 15, 1945. The sponsors, or godparents, were Daniel and Olga Ferraro,* respondent's brother and sister-in-law.

After respondent was discharged from the army he established a home for petitioner and Lorretta. He lived with petitioner as man and wife from December 27, 1945, to May 22, 1947, when respondent left petitioner and Lorretta. He has since the latter date failed to support petitioner or the infant child.

In the first stages of this proceeding respondent disputed the paternity of Lorretta but later conceded it. Such concession

makes it unnecessary further to discuss herein that originally controverted issue of fact, concerning which there is sufficient proof in the record, even apart from such concession to sustain the finding, hereby made, that respondent is the father of Lorretta. Accordingly, in any event respondent is chargeable with his child's support regardless of the alleged invalidity of the marriage ceremony, by virtue of subdivision 6 of section 101 of the Domestic Relations Court Act of the City of New York. For, petitioner adduced documentary proof that a marriage ceremony was duly performed on January 2, 1945, at Washington, D. C., by Judge NATHAN R. MARGOLD of the District Court of the United States for the District of Columbia, pursuant to a marriage license issued in ordinary course by the clerk of that District Court.

Respondent contends, however, that he is not liable in this proceeding for the support of petitioner, on the asserted ground that the proxy marriage heretofore entered into in the District of Columbia is null and void.

This court is taking judicial notice of the statutes of the District of Columbia and applicable decisions pursuant to section 344-a and section 391 of the Civil Practice Act, as adopted by Family Court rule XXVII (Bender's Court Rules [1st ed.], p. 372) and section 60 of the Domestic Relations Court Act.

Although the District of Columbia recognizes common-law marriages, no common-law marriage of these parties can be established as having taken place in the District of Columbia since they never lived there as man and wife.

While petitioner and respondent concede that they lived together as man and wife in the State of New York after the performance of the marriage ceremony in the District of Columbia, no marriage can be predicated upon that fact alone, since a valid common-law marriage cannot have its inception in the State of New York since April 29, 1933. (L. 1933, ch. 606; see *Anonymous* v. *Anonymous,* 19 N. Y. S. 2d 229, and " *Castellani* " v. " *Castellani* ", 28 N. Y. S. 2d 879, 887.)

However, the validity of a marriage is determined by the State where the marriage ceremony took place. Therefore, the validity of the marriage between petitioner and respondent must stand or fall upon the interpretation of the laws of the District of Columbia as they relate to the present state of facts. (*Van Voorhis* v. *Brintnall,* 86 N. Y. 18, 24–27, and *Van Wyk* v. *Realty Traders, Inc.,* 215 App. Div. 254, 256.)

The statutes of the District of Columbia relating to marriages make no direct mention of a provision for proxy marriages. There is nothing in the statutes that requires both parties to the marriage to be present at the time the license is issued. There is likewise nothing in the statutes which requires both parties to be present when the ceremony is performed.

The District of Columbia, like most of the States, regards marriage primarily as a civil contract, and imposes no requirement that the parties need cohabit to make the contract binding. (See *Meister* v. *Moore*, 96 U. S. 76; *Great Northern Ry. Co.* v. *Johnson*, 254 F. 683; *Hoage* v. *Murch Bros. Constr. Co.*, 50 F. 2d 983.)

" There is nothing in the statute which declares that a marriage shall not be valid unless solemnized in the prescribed manner, nor does it declare any particular thing requisite to the validity of the marriage. The act confines itself wholly with providing the mode of solemnizing the marriage and to the persons authorized to perform the ceremony. Indeed, the statute itself declares the purpose underlying the requirements to be to secure registration and evidences of the marriage rather than to deny validity to marriages not performed according to its terms, and, since the legislative intent to abrogate the common-law right may not be presumed, unless clearly expressed * * * we are necessarily brought to conclude that the decision of the lower court that common-law marriages in the District are invalid is not supported by law, and is wrong." (*Hoage* v. *Murch Bros. Constr. Co.*, supra, pp. 985–986.)

As cohabitation between the parties is not essential to a marriage contract in the District of Columbia, it would appear that the ceremonial proxy marriage which in this case took place between the parties in the District of Columbia effectuated a valid marriage. We do not need to decide this case upon that ground, however, since it is manifest that this petitioner followed every essential and mandatory step required by the statutes of the District of Columbia necessary to make her marriage to respondent valid. The facts at the trial abundantly sustained this conclusion because it is clear that petitioner made application to the Clerk of the District Court; that the license was duly issued by the clerk after six days had intervened; and that the marriage ceremony was performed by Justice NATHAN R. MARGOLD, as a person duly authorized to perform a marriage ceremony in the District of Columbia. It is also clear that in the absence of fraud or an express statutory requirement, either

that both parties appear before the clerk of the District Court duly authorized to issue such a license or be present when the marriage ceremony is performed, Justice MARGOLD not only had the right to, but did, perform a valid marriage ceremony which bound both petitioner and respondent to the marriage contract.

In addition, although the burden of proof of the existence of the marriage relationship between the parties rests in the first instance upon petitioner, nevertheless " Proof of the solemnization of a ceremonial marriage between parties gives rise to a true presumption of its validity." (*Matter of Dugro,* 261 App. Div. 236, headnote.) Every ceremonial marriage is presumed to be valid; and on any party attacking it is cast a heavy burden of proof. (*Matter of Callahan,* 142 Misc. 28, 31, affd. 236 App. Div. 814, affd. 262 N. Y. 524; *Matter of Salvin,* 106 Misc. 111, 112; *Matter of Masocco* v. *Schaaf,* 234 App. Div. 181, 183; *Kopit* v. *Zilberszmidt,* 35 N. Y. S. 2d 558, 566–567; cf. " *Boone* " v. " *Boone* ", 189 Misc. 214.)

Respondent has failed to overcome the above-described presumption.

To declare the instant marriage invalid in default of any proof of fraud, when all of the statutory requirements of the District of Columbia were met with; when the proxy marriage ceremony was later confirmed and accepted, would be a mockery of the broad public policy relating to the institution of marriage. Such a determination would disregard the force of the marriage vows and make it impossible for those who contract to marry to have any assurance of its legal permanency. No court should sanction the acts and attitude of a party, such as this respondent, whose conduct evinces a complete contempt for the institution of marriage, the family and the home.

The court finds that the marriage though entered into by respondent through a proxy is not invalid in the District of Columbia, where the marriage ceremony took place. Since, therefore, the marriage is valid in the District of Columbia, it is valid in the State of New York. It is the law of this State that a marriage valid in the place where performed is valid in this State unless such a marriage is repugnant to the public policy of this State. (See *Shea* v. *Shea,* 294 N. Y. 909; cf. *Cunningham* v. *Cunningham,* 206 N. Y. 341.) There is no law in this State declaring a marriage by proxy repugnant to its public policy.

For the foregoing reasons the court finds that petitioner and respondent were duly married in the District of Columbia and that the child, Lorretta Mary Ferraro, is their lawful issue. The court further finds that respondent, having left petitioner without just cause, is chargeable with the support of petitioner and their child according to respondent's means (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [1]; § 101, subd. 1), as embodied in the amended order of the court dated January 15, 1948.

Such order and today's confirmatory disposition are, of course, without prejudice to respondent's rights in any subsequent plenary action in the Supreme Court (*Loomis* v. *Loomis*, 288 N. Y. 222).