**ATWATER et al. v. EWING.**
Civ. No. 7103.

United States District Court
E. D. New York.
July 20, 1949.

48

Willkie Owen Farr Gallagher & Walton, New York City (Mark F. Hughes, and Raymond C. Murphy, New York City, of counsel), for plaintiffs.

J. Vincent Keogh, United States Attorney for Eastern District of New York, Brooklyn, N. Y. (Nathan Borock, Brooklyn, N. Y., of counsel), for defendant.

INCH, Chief Judge.

George W. Atwater, father of the infant plaintiffs, married Teresa A. Atwater on June 22, 1929. At that time they were both domiciled in New York State, and continued to live there for fourteen years. The infant plaintiffs were born in New York State. George W. Atwater died on the 9th day of December, 1943.

Upon his death there were certain social security benefits to which these three infant children would ordinarily be entitled, and for which they have now made claim.

However, prior to her marriage to Atwater, Teresa had been duly married to Ernest J. Patane. Patane and his wife had consulted a lawyer, and ·acting on his advice, obtained a so-called "mail-order" divorce in Mexico. Both of them believed the divorce so secured was a valid one and both subsequently remarried, Teresa marrying Atwater. Atwater had never been married before and his marriage was entered into in good faith and in the firm belief that his wife's prior marriage to Patane had been dissolved by the Mexico decree. Thereafter Mr. and Mrs. Atwater lived together and he duly supported his wife and his three infant children.

This Mexican divorce, as to the Patanes, was absolutely void and a nullity, and so considered by the law and policy of New York State, and by the defendant. Consequently, Mrs. Patane was not free to marry Atwater. It is conceded that Atwater not only acted in good faith, but that, on his part, he was in all respects free to marry the former Mrs. Patane.

In this situation, the Referee and the Appeals counsel for the Social Security Board, with some natural regrets, nevertheless have found and decided that in the absence of an annulment of the Atwater marriage by a judgment of the State Supreme Court, these three infant children of Atwater remain illegitimate, and, therefore, their claim must be and has been denied. Counsel for the plaintiffs and for the Federal Security Administrator, in accordance with Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and Section 205(g) of the Social Security Act of 1939, as amended, 42 U.S.C.A. § 405(g), have each moved for a summary judgment to obtain a review of this final decision of the Social Security Board.

There are no facts in dispute, and the sole question is one of law.

Counsel for the Federal Security Administrator argue that the infant children are entitled to benefits under the Act only if, under the laws of the State of New York, they would be entitled to inherit intestate personal property of the wage earner father. That under the intestacy laws of the State of New York, in the absence of an annulment action, they would not be so entitled to inherit and, therefore, they cannot obtain the benefits under the Act. That the issue of this void marriage between Atwater and Mrs. Atwater have never been legitimatized in an appropriate judicial proceeding, and that this can only be effected in connection with an annulment action brought in the State Supreme Court, and that no such annulment proceedings were ever had. That a presumption in favor of legitimacy is a rebuttable one and must give way to the undisputed facts.

On the other hand, counsel for the infant children argue that under the laws of New York the plaintiffs would be entitled to share in the estate of their father if he had died intestate, and reliance for such position is based on the New York Civil Practice Act, section 1135, subdivision 6, which provides as follows: "The following provisions ·govern the effect of declaring a marriage void or annulling a voidable marriage upon the legitimacy of

children of the marriage: * * * If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

That since the marriage of Atwater was contracted by him in good faith with the full belief that the former marriage of Teresa had been duly annulled or dissolved, and while Atwater himself was entirely free to so marry, the above provisions of law, setting forth the policy of the State of New York, squarely cover and provide for the legal rights of these three infant children to be deemed legitimate children of Atwater, "the parent who at the time of the marriage was competent to contract". That the issue here is whether or not a Surrogate's Court of the State of New York would hold the children to be legitimate in the absence of a prior determination of that fact in an action for an annulment.

Among the cases presented are: In Matter of Biersack, Sur. Ct. Kings Co. 1916, 96 Misc. 161, 159 N.Y.S. 519, affirmed 2nd Dept.1917, 179 App.Div. 916, 165 N.Y.S. 1077, in a somewhat similar situation where it was held that a child was entitled to share in the estate of his father, and also Matter of Grossman's Estate, Sur. Ct. Bronx Co. 1931, 139 Misc. 646, 248 N.Y.S. 791 and other cases relating to partition of real property and various other situations resulting from the married relation.

On the other hand, the defendant relies somewhat heavily on In re Crook's Estate, 140 Misc. 721, 252 N.Y.S. 373, and Anonymous v. Anonymous, 174 Misc. 906, 22 N.Y.S.2d 598, where the parent was not competent to marry, and various other cases which present certain views on the general subject.

I am specifically confining my decision to the exact facts not in dispute and conceded, as found in the proceeding before the Referee and the Appeals counsel. In substance these are that Mr. Atwater was competent to contract a marriage and in good faith married Teresa, and lived with her for fourteen years, and became the father of the three infant children, and then died. That Mrs. Atwater was not competent to marry, but was, in fact and law, a married woman not legally divorced from her husband due to the fact that she and such husband, after taking legal advice, had obtained what they thought was a proper decree of divorce in Mexico. That then both she and her husband, thinking themselves free to do so, married again, she marrying Atwater.

There is no question but that this so-called "Mexican divorce" was of the "mail-order" kind, and was absolutely ineffective and void to dissolve the marriage. The mere statement of what it was would alone be sufficient for any Court in the State of New York to so state and find that it was a nullity.

Only recently In re Rathscheck, 1949, 275 App.Div. 363, 89 N.Y.S.2d 490, 495, the Appellate Division, First Department of the State of New York, had a situation before it on appeal from a decree in the Surrogate's Court, New York County, and Mr. Justice Shientag, writing the opinion of the Court, had this to say about such a Mexican divorce: "If, therefore, the Mexican divorce here involved was void from the standpoint of both parties, if both were free to treat it as invalid, it would be most illogical and unreasonable to have it form the basis of affecting the marital status and of depriving either spouse of the right to share in the estate of the other. It cannot be presumed that

the Legislature, in enacting Section 87(b) of the Decedent's Estate Law, intended any such result. * * * What is a party to do who has obtained a Mexican divorce void on its face in order to preserve rights to share in the estate of the other? If the respondents' argument is followed to its logical conclusion, there would have to be a remarriage of the parties. *Even an adjudication of marital status, obtained in an action for declaratory judgment, holding a 'mail order' Mexican decree of divorce to be void* and the party obtaining it not estopped from questioning its validity, apparently *would not suffice,* or that adjudication would be merely the pro forma judicial expression concerning what, in the eyes of the law, was already regarded and treated for all purposes, as an absolutely void divorce." (Emphasis added.)

To be sure, the Appellate Court was there discussing a situation not here presented, but I am confronted with the argument, that unless there was an actual annulment of the marriage in question, because of this Mexican divorce, and with Atwater dead, these three infant children, who otherwise would be entitled to share in the estate of their deceased father, must remain illegitimate and have their claim denied.

I do not think that in a situation confined to the exact facts here presented, and the actual infant plaintiffs, that what would be a mere "pro forma judicial expression" by a State Court must be required. These proceedings here before the Referee and on appeal, with the conceded facts and with these findings, are entirely sufficient to overcome such objection, and a decision could here have been properly made that the three infant children can be and are deemed to be the legitimate children of their deceased father, George W. Atwater, and as such entitled to the insurance benefits to which their claim is made.

Accordingly, defendant's motion for summary judgment is denied, plaintiffs' motion for summary judgment is granted.

Submit on notice appropriate judgment.