**BLOCH v. EWING.**
No. 11449.

United States District Court
S. D. California, Central Division.

May 7, 1952.

Kopald & Mark, Beverly Hills, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., Robert Komins, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

MATHES, District Judge.

This action was brought to review the "final decision" of the Federal Security Administrator, 42 U.S.C.A. § 405(g), holding that plaintiff is not the legitimate child of Alexander Bloch, deceased, and hence not entitled to "child's insurance benefit" under the Social Security Act. 42 U.S.C. (1948 ed.) § 402(c), 42 U.S.C.A. § 402(d).

The material facts are these: Alexander A. Bloch and Pauline Levitt were married February 29, 1920 and lived together until November 1933. In 1940 at Reno, Nevada, Alexander secured a decree of divorce *a vinculo* from Pauline. He then married Catherine La Bue at Baltimore, Maryland,

on October 12, 1940. Plaintiff was born of this relationship on September 21, 1942 in New York. Alexander died on July 20, 1948 and at his death was a "fully or currently insured individual" under the Social Security Act, 42 U.S.C.A. § 414(a, b), 42 U.S.C.(1948 ed.) § 409(g, h) domiciled in the State of New York.

The Act provides that: "In determining whether an applicant is the * * * child * * * of a fully insured or currently insured individual * * *, the administrator shall apply such law as would be applied in determining the devolution of intestate personal property * * * by the courts of the State in which [the insured] was domiciled at the time of his death * * *." 42 U.S.C.A. § 416(h) (1), 42 U.S.C.(1948 ed.) § 409(m).

▇ The Surrogate Court of New York is vested with jurisdiction in appropriate proceedings to determine "the devolution of intestate personal property" under the law of New York; and in the course of such proceedings to determine also the status and relationship of the persons involved. Matter of Kimball, 1898, 155 N.Y. 62, 68, 49 N.E. 331; In re Vincent's Estate, Surr.Ct.1947, 189 Misc. 489, 71 N.Y.S.2d 165.

The Administrator at bar, proceeding as if exercising the jurisdiction of a New York Surrogate, found that New York was the domicil of the decedent at the time of the Nevada decree and held that Nevada therefore lacked jurisdiction to dissolve the first marriage. See Matter of Bingham's Estate, 2d Dept. 1943, 265 App.Div. 463, 39 N.Y.S.2d 756; cf. Williams v. North Carolina, 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577.

This holding was affirmed, upon a previous review by this court, and the proceedings were then returned to the Administrator to determine whether plaintiff was the legitimate son of Alexander under the law of New York. The matter is now once more before this court to review the Administrator's decision adverse to plaintiff on that issue.

▇ Since it may fairly be said that the presumption of legitimacy is one of the

strongest presumptions known to the law of New York, Hynes v. McDermott, 1883, 91 N.Y. 451, 43 Am.Rep. 677; In re Biersack, Surr.Ct.1916, 96 Misc. 161, 159 N.Y.S. 519, 523; Barker v. Barker, Sup.Ct.1915, 92 Misc. 390, 156 N.Y.S. 194, 195, affirmed, 2d Dept. 1916, 172 App.Div. 244, 158 N.Y.S. 413, the first question upon this review is whether the evidence is sufficient to overcome New York's singularly vital presumption of legitimacy.

██ ██ It appears beyond controversy that this presumption "will prevail as the all-sufficient basis for an adjudication, unless those who attack the legitimacy make clear and irrefragable proof of every element of fact necessary to defeat or escape the presumption"; and that: "Illegitimacy cannot be found unless the parties holding the burden of establishing it complete a chain of evidence which will not only demonstrate the fact and validity of the earlier marriage and its subsistence at the time of the later marriage, but will aggressively exclude every indication or suggestion which might conceivably rescue the second marriage from invalidity." In re Biersack, supra, 159 N.Y.S. at page 523.

██ All the plaintiff here need do therefore is point to evidence which establishes a marriage between his parents, and then wait for those who would attack his legitimacy to "make clear and irrefragable proof of every element of fact necessary to defeat * * * the presumption." Thus those who would dispute plaintiff's presumed legitimacy must adduce evidence to establish "that both parties were competent to contract the prior marriage, and that the relation so created continued to exist when the second marriage took place." Barker v. Barker, supra, 156 N.Y.S. at page 195.

There is but meager evidence in the record at bar to sustain a finding that the decedent and Pauline were both competent to contract the prior marriage; and only an inference bordering upon assumption supports the Administrator's finding that the decedent took no steps other than the Nevada decree to dissolve the prior marriage. Thus it is highly doubtful whether New York's presumption that plaintiff is legitimate has been rebutted, being "so strong that it cannot be overthrown without directly proving every link in the chain of evidence which destroys the presumption, even though that involves establishing a negative." Barker v. Barker, supra, 156 N.Y.S. at page 195; cf. Ray v. Social Security Board, D.C.S.D.Ala.1947, 73 F.Supp. 58, 63.

The Administrator, however, viewed the evidence as sufficient to rebut the presumption of legitimacy. Having so found, in my opinion he should have proceeded to determine, by authority of § 1135(6) of the New York Civil Practice Act, that plaintiff is nonetheless the legitimate child of the decedent.

Section 1135(6) provides that: "If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

The Administrator urges that exclusive jurisdiction to exercise authority under the statute just quoted is conferred upon the Supreme Court of New York acting in annulment proceedings. See Anonymous v. Anonymous, Dom.Rel.Ct.1940, 174 Misc. 906, 22 N.Y.S.2d 598, 609; In re Crook's Estate, Surr.Ct.1931, 140 Misc. 721, 252 N.Y.S. 373, 375.

██ Upon the prior review in this case, I was strongly inclined to agree that § 1135 must be construed as narrowly as the Administrator contends. Further consid-

eration, however, has led me to the conclusion that the authority of § 1135 is not conferred exclusively upon the Supreme Court of New York acting in annulment proceedings. See In re Grossman's Estate, Surr.Ct.1931, 139 Misc. 646, 248 N.Y.S. 791, 792; cf. Atwater v. Ewing, D.C.E.D.N.Y.1949, 86 F.Supp. 47, 49–50; Smith v. Smith, Dom.Rel.Ct.1942, 179 Misc. 19, 37 N.Y.S.2d 137, 139; Bracy v. Bracy, Dom.Rel.Ct.1938, 167 Misc. 253, 3 N.Y.S. 2d 827, 832. Observations to the contrary in Anonymous v. Anonymous, supra, 22 N.Y. S.2d at page 609, are to be read as dicta in the light of the fact that both parents were living and thus able to sue in the Supreme Court of New York for an annulment.

In the proceedings at bar, on the other hand, the death of plaintiff's father has foreclosed for all time the possibility of such a suit. As was said in Barker v. Barker, supra, 156 N.Y.S. at page 196: "If the infant's father was now alive, he could maintain an action to annul the marriage with the infant's mother, and in such action the infant could be adjudged legitimate as to him; but now that he is dead, and the action can no longer be brought, it is asserted that [the infant] must remain branded as illegitimate, although the facts would require a judgment of legitimacy in an action brought by either father or mother in the lifetime of the other * * *. This would be a strange case. [The infant] may be adjudged legitimate in an action brought by another, to which [he] is not a party; but in an action to which [he] is a party the court on the same facts cannot declare the same judgment. I cannot think that such is the law. Such rule would be so repugnant to every sense of justice and decency that I shall not assume that such was the intent of the Legislature in enacting section 1745 of the Code [now Civil Practice Act § 1135]".

The Surrogate Court of New York has faced this problem in two cases, with opposite results. In the case of In re Crook's Estate, supra, 252 N.Y.S. at page 375, which did not involve a situation akin to that at bar, it was held that the Surrogate court did not have jurisdiction to legitimize the children of the decedent's void marriage; while In re Grossman's Estate, supra, 248 N.Y.S. at page 792, was a case where the situation was closely akin to that at bar, and the Surrogate court there proceeded to declare legitimate the child of a decedent's void marriage. But see In re Wright's Estate, Surr.Ct.1930, 137 Misc. 391, 243 N.Y.S. 538, 544; compare N.Y. Civil Practice Act, § 1135(6) with former N.Y.Code Civ.Proc. § 1745; Baylis v. Baylis, 1913, 207 N.Y. 446, 101 N.E. 176, 177, 178.

■■ It is settled of course that "the intent and purpose of * * * legislative commands must be found from the statutes relating to the same general subject-matter taken as a whole." Betz v. Horr, 1937, 276 N.Y. 83, 88, 11 N.E.2d 548, 550, 114 A.L.R. 491. Moreover, reasoning by analogy from statute is a soundly established common-law technique involving the age-old principle of the "equity of the statute." Application of this principle requires the enactment to be construed and treated not only as an expression of legislative intent and purpose relating to the particular situation dealt with in the statute, but also as a declaration of policy which may serve as a precedent in analogous situations not expressly covered by the statute; and necessarily presupposes such legislature-made precedent entitled to recognition comparable to that accorded judge-made precedents. See United States v. Freeman, 1845, 3 How. 556, 565, 44 U.S. 556, 565, 11 L.Ed. 724; Metaxas v. United States, D.C.S.D.Cal. 1946, 68 F.Supp. 667, 670; Stone, The Common Law in the United States, 50 Harv.L. R. 4, 12 (1936); Landis, Statutes and the Sources of Law in Harvard Legal Essays, 213, 214–218 (1934); Pound, Common Law and Legislation, 21 Harv.L.R. 386 (1908).

Applying the doctrine to the case at bar, the New York legislature in enacting § 1135 has expressed legislative purpose to empower a court called upon to declare a marriage to be a nullity, to proceed further and declare legitimate the children of that marriage, and thus overcome injustices resulting from the legal fiction of voiding a marriage ab initio. See Hiser v. Davis, 1922, 234 N.Y. 300, 307,

137 N.E. 596, 598. Furthermore, since the adoption of § 1135, the New York legislature has emphasized this legislative policy by declaring in § 101(6) of the Domestic Relations Court Act that: "A child born of * * * a ceremonial marriage shall be deemed the legitimate child of both parents for all purposes of this act regardless of the validity of such marriage." This policy has been given full effect in the Domestic Relations Court of New York. Ferraro v. Ferraro, Dom.Rel.Ct.1948, 192 Misc. 484, 77 N.Y.S.2d 246, 249, affirmed sub. nom. Fernandes v. Fernandes, 2d Dept. 1949, 275 App.Div. 777, 87 N.Y.S.2d 707; Bentley v. Bentley, Dom.Rel.Ct.1948, 191 Misc. 972, 76 N.Y.S.2d 877, 879; Andrews v. Andrews, Dom.Rel.Ct.1945, 185 Misc. 970, 58 N.Y.S.2d 20, 25; Smith v. Smith, supra, 37 N.Y.S.2d at page 139; and see Caldwell v. Caldwell, 1948, 298 N.Y. 146, 81 N.E.2d 60, 61.

Manifestly then the holding in Re Crook's Estate, supra, 252 N.Y.S. at page 375, that the Surrogate court does not have jurisdiction to adjudge legitimate the child of a decedent's void marriage, does not tend to effectuate the policy of the law of New York as to legitimation.

■ But whatever may be the correct view as to the power of the Surrogate court under § 1135, the Social Security Act directs the Administrator to "apply such law as would be applied in determining the devolution of intestate personal property * * * by the courts of the State in which [the decedent] was domiciled at the time of his death * * *." 42 U.S.C.A. §§ 416(h) (1), 42 U.S.C. (1948 ed.) § 409(m). This constitutes an unqualified direction to apply the intestate personal property law, as such; and it is plain from the language of the Act that the Administrator's authority in applying "such law" is not limited to the jurisdiction of one particular domiciliary court. Hence the question of legitimation at bar need not turn upon the scope of the jurisdiction of the Surrogate court, but upon the substantive legitimation law of New York as applied "by the courts of the State * * *."

■ Thus in declaring the marriage of plaintiff's parents to be a nullity, the Administrator was unquestionably exercising, for the purposes of the Social Security Act, the same jurisdiction and authority *ex statuto* as the Supreme Court of New York exercises in annulment proceedings generally. And since the Administrator in the administration of the Social Security Act has the authority, upon applying certain applicable New York law, to declare the marriage a nullity, by the same token he should be held to have the authority also, upon applying other applicable New York law—§ 1135(6) of the Civil Practice Act—to declare legitimate the children of the marriage so determined to be a nullity. See Atwater v. Ewing, supra, 86 F.Supp. at pages 49–50. As Mr. Justice Cardozo once observed: "Consequences cannot alter statutes, but may help to fix their meaning." In re Rouss, 1917, 221 N.Y. 81, 116 N.E. 782, 785.

■ It is my opinion therefore that upon determining the marriage between the decedent and Catherine to have been a nullity under the law of New York, the Administrator should have proceeded to determine also that under applicable New York law plaintiff was entitled to be declared the legitimate child of the decedent, and hence entitled to the insurance benefits in controversy. 42 U.S.C. (1948 ed.) § 402(c), 42 U.S.C.A. § 402(d).

■ For the above reasons plaintiff's motion for summary judgment is granted to the extent that the decision of the Federal Security Administrator is reversed and the Administrator is directed to determine upon the record made in these proceedings, cf. Social Security Board v. Nierotko, 1946, 327 U.S. 358, 66 S.Ct. 637, 90 L. Ed. 718, that the plaintiff, Ralph J. Bloch, is the "child" of a "fully * * * or currently insured individual" within the meaning of 42 U.S.C. (1948 ed.) § 409(k, m), 42 U.S.C.A. § 416(e, h), and is therefore entitled to "child's insurance benefit" within the meaning of 42 U.S.C. (1948 ed.) § 402(c), 42 U.S.C.A. § 402(d).

Counsel for plaintiff will submit summary judgment accordingly pursuant to local rule 7 within ten days.