In the Matter of the Estate of W. LAWRENCE NEWINS, Deceased. CELESTE C. NEWINS, as Administratrix C. T. A., et al., Appellants; ESTHER C. NEWINS, Individually and as General Guardian of Lenore R. Newins, et al., Respondents.

Second Department, June 4, 1962.

*Gordon M. Lipetz* for Celeste C. Newins, appellant.

*Wallace F. Davidow* for Richard L. Newins, appellant.

*Reginald C. Smith, William W. Esseks* and *Pierre G. Lundberg* for Esther C. Newins and another, respondents.

UGHETTA, Acting P. J.  We are here concerned with the status as distributees of a woman who had entered into a purported marriage with testator and of their infant daughter.

Testator was born in 1906.  Apparently he resided all of his life in Center Moriches, Long Island.  On January 27, 1926 he married Kathleen Sheppard.  On July 14, 1927 appellant Richard L. Newins, hereinafter referred to as Richard, was born of that marriage; he is an only child.  On Setember 28, 1936, Kathleen procured a final decree of divorce in the Supreme Court, Nassau County.  She is still living.

Testator could not lawfully remarry in this State without permission of the court in which the judgment of divorce was rendered (Domestic Relations Law, §§ 6, 8).  The statute is to be deemed part of the divorce decree (*Newins* v. *Newins*, 10 A D 2d 856, motion for leave to appeal denied 8 N Y 2d 707).

On June 26, 1937 testator married Beatrice Field in New Jersey.  She died in September, 1950.  There were no children of that marriage.

In 1952, while unmarried, testator made the will which has been admitted to probate.  After devises to Richard and another person, and after legacies to five individuals, he gave the residuary to his brother Edward, and named him sole executor.

On February 10, 1959 testator and respondent Esther Connell Newins, hereinafter referred to as Esther, were married at Riverhead, Suffolk County.  In his application for the marriage license testator stated that the proposed marriage would be his second; that he is not a divorced person; that his former wife is dead; and that no legal impediment exists as to his right to enter into the marriage state.

On April 30, 1959, a child of this purported third marriage was born — respondent Lenore R. Newins, hereinafter referred to as Lenore.

Testator died on July 1, 1959.

In his petition for probate, brother Edward, the named executor, set forth as distributees not only appellant Richard, but also respondent Esther, as wife, and respondent Lenore, as a daughter of the testator.  Petitioner Edward died during the course of ensuing proceedings.  His wife, Celeste, was thereafter appointed as administratrix *c. t. a.*  Richard moved to strike out the appearance of Esther and to dismiss the special guardian for Lenore on the ground that they were not interested persons, in that without court permission the purported marriage of Esther to testator was void under the foregoing provisions of the Domestic Relations Law.  Esther and Lenore thereupon sought a construction of the will that the marriage

of testator to Esther be deemed valid; that Lenore be declared the legitimate issue of a valid marriage or be declared legitimate in any event, pursuant to section 1135 of the Civil Practice Act, and be declared to be entitled to take as an after-born child under section 26 of the Decedent Estate Law.

In the first of three determinations, made by his decision after a hearing and stipulation of facts and documentary proof, the learned Surrogate denied the motion of Richard to strike out the appearances of respondents Esther and Lenore. He did so, not on the merits, but on the ground that they were properly cited because they were " presumptively " the widow and daughter of testator. This was error. There is no doubt that respondents Esther and Lenore were properly cited. The motion, however, had to do with their interest in the estate. It should have been determined on the merits (*Matter of Cook,* 244 N. Y. 63, 72; *Matter of Browning,* 153 Misc. 564; Surrogate's Ct. Act, § 314, subd. 10).

The determination is virtually academic, however, as the Surrogate held, on motion of said respondents for construction (with the same objective of determining their status) that Lenore presumptively is a legitimate child. Such holding necessarily implied that the marriage of her parents was lawful. The Surrogate reasoned that the proof of void marriage which had been presented was insufficient to overcome the presumption of Lenore's legitimacy. Of course, if the marriage was void under section 8 of the Domestic Relations Law (see *Polizzi* v. *Polizzi,* 13 Misc 2d 309), the good faith of Esther in entering into it would be of no avail (*Matter of Moncrief,* 235 N. Y. 390; *Landsman* v. *Landsman,* 302 N. Y. 45, 48); and Lenore, unless judicially legitimatized, would take nothing save as allowed her by statute (*Bell* v. *Terry & Tench Co.,* 177 App. Div. 123; cf. Decedent Estate Law, § 83, subd. 13).

An attack on legitimacy is usually based on (1) lack of access of the purported father, or (2) bar of a pre-existing marriage as of the time that the parents had wed. In the familiar *Matter of Findlay* (253 N. Y. 1), a wife in England ran off with another man in 1864. The illicit union continued in England to about 1875 (year of birth of the person claiming as son of the wronged husband) and thereafter in this country until it was terminated by death. It was held that the presumption of legitimacy would not bear the strain of reliance upon the possibility that the husband visited the wife while she was living in adultery away from him. Cardozo, Ch. J., writing for a unanimous court, reduced the extravagant expressions of the effect of the presumption, noted in early authority, to this: " What is meant

by these pronouncements, however differently phrased, is this and nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides '' (p. 8).

It is settled that the presumption of legitimacy of children of a subsequent purported marriage will withstand attack unless it be shown that the original marriage was lawful and continuously remained so until the time of the subsequent marriage (*Matter of Dugro,* 261 App. Div. 236, affd. 287 N. Y. 595; *Matter of Callahan,* 142 Misc. 28, affd. 236 App. Div. 814, affd. 262 N. Y. 524; *Barker* v. *Barker,* 92 Misc. 390, mod. 172 App. Div. 244; *Matter of Biersack,* 96 Misc. 161, affd. 179 App. Div. 916). As in *Biersack* (p. 166), the expression of Lord. COTTENHAM is invoked, viz: '' A presumption of this sort, in favor of marriage, can only be negatived by disproving every reasonable possibility. * * * You should negative every reasonable possibility.''

Progeny will not serve, however, to metamorphose a bigamous marriage into a valid one (*Johnson* v. *Johnson,* 270 App. Div. 811, affd. 295 N. Y. 477; *Matter of Vargo,* 282 App. Div. 701; *Matter of Wright,* 137 Misc. 391; *Matter of Wood,* 203 Misc. 809).

It comes to this: If all reasonable possibilities of lawfulness of the subsequent marriage have been rebutted the presumption of legitimacy is extinguished.

The Surrogate has held that there was lack of satisfactory proof of the validity of the testator's first marriage. Such holding is an example of what is characterized in *Matter of Findlay* (*supra,* p. 13) as '' the presumption of legitimacy gone mad.'' Indulgence of such presumption on behalf of Lenore would carry with it the implication that Richard was illegitimate. We have the marriage certificate of Kathleen and testator on January 27, 1926 and the undisputed stipulated testimony of Kathleen detailing her lawful marriage, with Richard as the child thereof. It is admitted in the reply of Esther and Lenore that '' the decedent was divorced by Kathleen Sheppard Newins, *his first wife,* in the year 1936.'' (Emphasis supplied.)

Next, the Surrogate regarded the presumption of legitimacy as sufficient to overcome the presumption of continuance of validity of the first marriage to the time of the divorce decree. The difficulty with this holding is that the case is not one of pre-existing marriage as a bar to validity of a subsequent one. The marriage of Esther was not rendered unlawful by a pre-existing marriage. Esther's marriage is void because the statute says it is if it was entered into without court permission. The 1936 divorce decree has never been the subject of attack.

The final possibility relied on by the Surrogate is that permission to remarry was in fact procured by testator. But the records of the County Clerk of Nassau County show no modification of the 1936 decree. It had been stipulated by Esther and Lenore that testator had married Esther '' without theretofore obtaining the permission of any court.''

We appreciate that the Surrogate was animated by the most laudable of motives in endeavoring to preserve as lawful the marriage of testator and Esther; but there is no alternative to the conclusion that that marriage was void. It follows that the motion of Richard to strike appearances should be granted at least with respect to Esther as a person having no interest in the estate.

This leaves for consideration the application of section 1135 of the Civil Practice Act. In addition to reliance on the presumption the Surrogate determined, in accordance with subdivision 7 of section 1135 of the Civil Practice Act, that Lenore is to be deemed legitimate as to both parents. Appellants argue that this determination is erroneous for the reason that legitimization under section 1135 is restricted to exercise of power which the Legislature confided in a Justice of the Supreme Court as an incident of an annulment action. Section 1135 is part of article 67 entitled '' Action to annul a marriage.'' It consists of eight subdivisions prefaced by this statement — '' The following provisions govern the effect of declaring a marriage void or annulling a voidable marriage upon the legitimacy of children of the marriage: ''. In the first, second, and fifth subdivisions the Legislature has itself provided for legitimization, in certain instances, if a marriage be annulled. Dependent upon findings and discretion, the court, under the second, third, fourth and sixth subdivisions, may legitimatize as to one or both parents if a marriage be annulled. In the seventh subdivision, if a marriage be annulled for causes other than those previously specified, '' the court by the judgment may decide that a child of the marriage is the legitimate child of either or both of its parents.'' In the eighth subdivision, the court is empowered to limit the effect of the legitimization.

The first six of these subdivisions had been taken from the Revised Statutes and incorporated into the Code of Civil Procedure as sections 1745 and 1749. They were part of article first of title I of chapter XV of the code having to do with an action to annul a void or voidable marriage. In 1919 (L. 1919, ch. 202) the first six subdivisions, with the remaining two subdivisions added, were collated as section 1749 of the code.

Section 1749 was incorporated without change into section 1135 of the Civil Practice Act.

In the light of its setting and language it would be futile to endeavor to gainsay the fact that in section 1135 the Legislature was concerned with the status of children as an incident of an action for annulment or to declare an annulment. Even so, the question that persists is whether the power to determine legitimacy under section 1135 is exclusive to a Justice of the Supreme Court sitting in an annulment action. There never has been an authoritative determination. There is the dictum of Mr. Justice BLACKMAR (later Presiding Justice of this court) in *Barker* v. *Barker* (92 Misc. 390, 394, 395, *supra*) that legitimization under the statute, particularly where possibility of an annulment action has been terminated by death, may be otherwise judicially accomplished. It is at odds with subsequent dictum of HISCOCK, Ch. J., in *Hiser* v. *Davis* (234 N. Y. 300, 307–308).

In our opinion it was within the power of the Surrogate to declare legitimate the infant Lenore in accordance with the legislative detailed plan of legitimization expressed in the statute. The Legislature contemplated the exercise of the legitimization power by the Supreme Court as an incident of annulment actions. Here, death has rendered impossible the assumption of such jurisdiction. We ascribe to the Legislature the intent to have such power exercised by a court of comparable jurisdiction rather than have bastardy status ensue for want of capacity to procure a considered judicial determination. That court of comparable jurisdiction, in the light of testator's death, is the Surrogate's Court with its broad power to administer justice in all matter relating to the affairs of decedents, including the respective interests of parties dependent upon legitimacy (Surrogate's Ct. Act, § 40; *Matter of Matthews,* 153 N. Y. 443; *Matter of Lentz,* 247 App. Div. 31).

The amended decree should be modified, on the law, by striking out the fourth ordering paragraph and by providing in lieu thereof that the motion to strike out the appearance of Esther Connell Newins and to dismiss the special guardian for the infant Lenore R. Newins should be granted to the extent of striking out the appearance of Esther Connell Newins individually, and otherwise denied. As so modified, the amended decree, insofar as appealed from, should be affirmed, without costs. The facts are affirmed.

KLEINFELD, BRENNAN, RABIN and HOPKINS, JJ., concur.

Amended decree modified on the law as follows: (1) by striking out the fourth decretal paragraph which denied the application

to strike out Esther's notice of appearance and to dismiss Lenore's special guardian, and which dismissed such application; and (2) by substituting therefor a paragraph granting said application to the extent of striking out Esther's notice of appearance as an individual, and otherwise denying the application.

As so modified, the amended decree, insofar as appealed from, is affirmed, without costs. The facts are affirmed.