County, 28 Misc. Rep. 333, 59 N. Y. Supp. 883, affirmed 46 App. Div. 623, 61 N. Y. Supp. 1150. It will not, I think, conflict with any controlling authority to hold that by comity all of the property of the defendant became impressed with a trust in favor of its creditors, upon the commissioner of banking and insurance taking possession, and that, so far as material here, he should be accorded the same right the assignee in case of a voluntary assignment has, and that thereafter the property of the defendant was not subject to the attachment, and that the remedy of the depositor was that prescribed by the statute pursuant to which he is presumed to have entered into the contractual relation of debtor and creditor with the defendant. See Relfe v. Rundle, supra. It contravenes no statutory law, or public policy, of this state to accord this effect to the statutory law of a sister state, the business of whose citizens is so intimately interwoven with that of our own state. Moreover, to fail to give this effect to the New Jersey law would be opposed to the interests of the citizens of this state, for it would discourage the deposit by nonresidents of funds and securities with our banking and trust corporations. I am of opinion, therefore, that we should by comity apply the same rule that we apply in similar circumstances with respect to banks and trust companies in our own jurisdiction, which precludes one creditor from obtaining a preference by attachment, or otherwise, after the superintendent of banks has taken charge.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.

---

### In re TOMBO. (No. 6204.)

(Supreme Court, Appellate Division, First Department. November 6, 1914.)

GUARDIAN AND WARD (§ 11*)—TESTAMENTARY GUARDIAN—RIGHT TO APPOINT —STATUTES—"MARRIED WOMAN"—"HUSBAND"—"LEGITIMATE CHILD."

    Code Civ. Proc. § 1745, provides that where one of the parties, having a former spouse living, innocently attempts marriage, the issue are "for all purposes" the legitimate children of the competent parent, and that such innocent party is entitled to appoint a testamentary guardian. Section 1749 provides that, where a marriage has been declared void ab initio for the mental incapacity of one of the parties, a child of such marriage is "for all purposes" the legitimate child of the parent who is of sound mind. Domestic Relations Law (Consol. Laws, c. 14) § 81, declares the parents of a child to be its joint guardians, and that on the death of one the other may appoint a guardian, and that a married woman is a joint guardian of her children with her husband. Decedent, after his wife had been adjudged insane, obtained a judgment annulling the marriage on that ground and declaring their child to be "for all purposes" his legitimate child. Held, that the omission of any provision from section 1749 entitling the party of sound mind to appoint a testamentary guardian did not withhold such power from the parent who was of sound mind, and that section 81 applied only where the child was the legitimate child of both parents; that in this case the mother was not a "married woman," and the decedent was not her "husband," and hence decedent was entitled to appoint a testamentary guardian for the infant child.

    [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 34-39; Dec. Dig. § 11.*
    For other definitions, see Words and Phrases, Second Series, Married Woman; also First and Second Series, Husband; Legitimate Child.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Surrogate's Court, New York County.

In the matter of the guardianship of Marion A. Tombo, under the will of Rudolf Tombo, Jr., deceased. From an order of the Surrogate's Court (86 Misc. Rep. 361, 149 N. Y. Supp. 219), denying the application of J. Boyce Smith for letters of guardianship over Marion Adelaide Tombo, an infant, Smith appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

J. Frank McDavitt, of New York City, for appellant.

SCOTT, J. The facts are accurately stated by Mr. Surrogate Cohalan, as follows:

"Rudolf Tombo, Jr., died in May, 1914, and his will was probated in this court in June, 1914. Paragraph 6 thereof provides as follows: 'Sixth. I hereby appoint J. Boyce Smith, Jr., guardian of the person and estate of my daughter, Marion Adelaide Tombo, herewith directing that said guardian be allowed to qualify and serve as such without the giving of any security whatsoever.' Said Rudolf Tombo, Jr., in December, 1901, married one Mary Adelaide Cooper, and in February, 1903, said Marion Adelaide Tombo was born to said Rudolf Tombo, Jr., and Mary Adelaide Tombo, then his wife. Thereafter Mary Adelaide Tombo was legally adjudged insane by an order of a justice of the Supreme Court. In June, 1911, Rudolf Tombo, Jr., the decedent, brought an action against his wife, Mary Adelaide Tombo, to annul their marriage on the ground of insanity existing at the time of such marriage, and on October 13, 1911, a final judgment in said action was entered by which the aforesaid marriage was annulled 'on the ground that the defendant was a lunatic at the time the marriage was contracted and incapable to consent thereto for want of understanding.' The said judgment further provided 'that Marion Adelaide Tombo, the child of such marriage hereby declared to be void, be deemed for all purposes the legitimate child of the plaintiff, Rudolf Tombo, Jr., that the custody of said child be awarded to the plaintiff, Rudolf Tombo, Jr., and that the defendant resume her maiden name of Mary Adelaide Cooper.' The aforesaid judgment was in accordance with section 1749, C. C. P., which provides as follows: 'A child of a marriage which is annulled on the ground of the idiocy or lunacy of the parents is deemed for all purposes the legitimate child of the parent who is of sound mind.' "

The surrogate was of the opinion that upon this state of facts the father was not entitled to appoint by will a guardian for his infant child. He was led to this conclusion by a consideration of section 81 of the Domestic Relations Law and of sections 1745 and 1749 of the Code of Civil Procedure. The difference in the language of the two last mentioned sections is interesting. Both sections deal with the consequences following upon the annullment of a marriage for reasons existing at the time the marriage was attempted to be contracted, and which rendered the attempted marriage void ab initio.

Section 1745 has to do with a case in which one of the contracting parties had a former husband or wife living at the time of the attempted marriage. As to such a marriage, it is provided that where one party was competent to contract a marriage, and entered upon the attempted marriage contract innocently, the issue—

"are deemed for all purposes the legitimate children of the parent who at the time of the marriage was competent to contract, and are entitled to succeed as such, in the same manner as other legitimate children, to the real and personal estate of said parent; and the issue so entitled must be specified in the

judgment, and the innocent party must be awarded their custody, and he or she is entitled to appoint a guardian of their persons by will."

Section 1749 deals with the case of the issue of a marriage which has been judicially declared void ab initio by reason of the mental incapacity of one of the contracting parties. It further provides as follows:

"A child of a marriage, which is annulled on the ground of the idiocy or lunacy of one of its parents, is deemed, *for all purposes*, the legitimate child of the parent who is of sound mind. A child of a marriage, which is annulled on the ground that one or both of the parties had not attained the age of legal consent, is deemed, for all purposes, the legitimate child of both parents."

The surrogate was of the opinion that, because the Legislature had inserted in section 1745 the words "he or she [the innocent party] is entitled to appoint a guardian of their persons by will," and had omitted those words in section 1749, it had intended to withhold the power to appoint a guardian by will from the sane parent, where the marriage had been declared void for the insanity of the other, leaving the child of such a marriage in the peculiar and unfortunate position that no one could legally and competently appoint a guardian, for the mother being insane, would be incapable of making a valid appointment, even if otherwise qualified.

We do not consider, however, that the difference in phraseology between sections 1745 and 1749 of the Code is to be considered as an indication that it was the deliberate intention of the Legislature that, in a case like the present, the only parent of whom the child is to be deemed legitimate should be held to be incapable of appointing a testamentary guardian. Both sections are included in article 1, title 1, of chapter 15 of the Code, said article dealing, as its title indicates, with an "action to annul a void or voidable marriage." Section 1745 is the first one dealing with the status of the child of such a marriage. It relates specifically to the case of a marriage declared void by reason of the fact that one of the contracting parties had a former husband or wife living at the time of the marriage. As to the issue of such a marriage, it is provided that said issue—

"born or begotten before the final judgment [of nullity], are deemed for all purposes the legitimate children of the [innocent] parent who at the time of the marriage was competent to contract."

The section then goes on, doubtless quite unnecessarily, to specify the consequences flowing from so considering the issue of such a marriage, to wit: That the children so declared to be legitimate, as to the innocent parent, are entitled to succeed as such legitimate children and in the same manner as other legitimate children to the real and personal estate of said parent, and said parent is entitled to the custody of such legitimatized children and to appoint a guardian by will. All of these consequences would naturally flow from the declaration that the issue of such a marriage are to be deemed *"for all purposes* the legitimate children" of the innocent party. The addition of the words to section 1745, which are not found in section 1749, do not, in our opinion, add to or subtract from the natural meaning of

the provisions, common to both sections, that the issue of void marriages shall be deemed to be the legitimate children "for all purposes" of the innocent or sane parent, as the case may be.

It cannot be doubted that a child of a marriage avoided for the mental incompetency of one of its parents, but who is declared to be the legitimate child of the sane parent "for all purposes," would share, like any other legitimate child, in the distribution of such parent's estate, or that such parent, during his own lifetime and the child's infancy, would be entitled to the custody of such child. No more can we doubt that such a parent has the power to appoint by will a guardian for such a child. All these things are the natural consequences of the relation between a parent and his legitimate child. The surrogate, however, was of the opinion that, because the natural mother of the infant is living, the father could not, under section 81 of the Domestic Relations Law, lawfully appoint a guardian by will or deed, to the exclusion of the other. It is evident, however, that this section is applicable only where the infant is the legitimate child of both parents. This is clearly indicated by the first sentence of the section, which reads:

"A *married* woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them."

In the present case, the mother of the infant was not a "married woman," and the decedent was not her "husband," for the attempted marriage between them has been declared to have been void ab initio. It follows that the order appealed from must be reversed, and the matter referred back to the Surrogate's Court. All concur.