In the Matter of the Estate of HARRY L. WRIGHT, Deceased.

Surrogate's Court, Tioga County, June 27, 1930.

*Edward W. Eaton,* for the administratrix.

*Keane & Orrell,* for Clifford Wright.

*Benjamin W. Loring,* special guardian for Teresa Wright and Mervel Wright, infant parties.

TURK, S.  On November 15, 1929, the administratrix of the goods, chattels and credits of Harry L. Wright, deceased, filed her account as such administratrix and a petition asking that her account be finally and judicially settled.  In her " statement of all persons entitled as widow, legatee, or next of kin of the deceased to a share of his estate," she named, " Coral E. Shipman, sister; Anna B. Poole, sister; and Ida L. Grant, sister."  She then made the following statement: " The following are the names and addresses of the three (3) children of Martin Wright, father of the above-named decedent, by a reputed second wife.  Such marriage, if any, as was entered into between said Martin Wright and his reputed second wife, was illegal, for the reason that William *Poole,* the husband of the said second wife, was still living and from whom said second wife had not been divorced, as petitioner is informed and believes:

" Clifford Wright, residing at R. D., Port Crane, N. Y.

" Mervel Wright, residing at Athens, Pa.

" Teresa Wright, residing at Health Camp, Conklin, N. Y.

"The said Clifford Wright is of full age. The said Mervel Wright is a minor of the age of eighteen (18) years, and the said Teresa Wright is a minor of more than fourteen (14) years of age."

A citation was duly issued and on the return of the citation Clifford Wright filed objections to the account in which he contended that he was entitled to a distributive share of the estate of the decedent. Teresa and Mervel Wright through their special guardian joined with Clifford Wright in his contention and also contended that they were entitled to a share in the estate.

From the evidence taken following the filing of objections and from the papers on file, it appears that Harry L. Wright, the decedent, died in France on about the 2d day of July, 1918, while in the military service of the United States; that at the time of his death he was insured under the war risk insurance and upon his death the benefits accruing from said insurance became payable to his father, Martin Wright; that upon the death of Martin Wright the balance of the insurance remaining unpaid, amounting to $3,045, became payable to the estate of Harry L. Wright.

It seems to be undisputed that Martin Wright, father of the decedent, was married twice; that the first wife died leaving four children: Harry L. Wright, this decedent, Coral E. Shipman, Anna B. Poole and Ida L. Grant.

The evidence discloses that on the 28th day of June, 1901, Martin Wright entered into a marriage ceremony in the county of Tioga and State of New York, with one who gave her name as Celestia Martin, and who was also known as Celestia Perry and Celestia Cole; that three children were born of that marriage, Clifford Wright, Mervel Wright and Teresa Wright. Prior to her marriage to Martin Wright and on the 29th day of November, 1895, Celestia Perry married one William E. Cole at Wysox, Pa. William E. Cole lived with Celestia Perry for about two years, when they separated. From the time of the separation until Celestia Cole was married to Martin Wright, William E. Cole resided within ten or twelve miles from the place where he and his wife had lived while they were cohabiting with each other, and this was in a county adjoining the county where Martin R. Wright was married and afterwards lived.

Mr. Cole testified that he had never obtained any divorce from his wife and no papers were ever served on him in behalf of his wife for a divorce or annulment.

The question to be determined in this case is: Are Clifford Wright, Mervel Wright and Teresa Wright the legitimate children of Martin Wright; for section 89 of the Decedent Estate Law provides: "If a woman die without lawful issue, leaving an illegi-

timate child, the inheritance shall descend to him as if he were legitimate. *In any other case illegitimate children or relatives shall not inherit."*

Where the legitimacy of a child born of a *de facto* marriage is assailed upon the allegation that one of the child's parents was a party to an earlier marriage, a presumption is in favor of legitimacy. This is one of the strongest presumptions known to the law. (*Matter of Biersack*, 96 Misc. 161; affd., 179 App. Div. 916.) This presumption has obtained for many years. In *Piers* v. *Piers* (2 H. L. Cas. 331) it was said that this presumption of law is not likely to be repelled. It is not to be broken in upon or shaken by a mere balance of probability.

In *Matter of Biersack* it was said that this presumption " will prevail as the all sufficient basis for an adjudication, unless those who attack the legitimacy make clear and irrefragable proof of every element of fact necessary to defeat or escape the presumption." It is further said " that illegitimacy cannot be found, unless the party holding the burden of establishing it complete a chain of evidence which will not only demonstrate the fact and validity of an earlier marriage and its subsistence at the time of the later marriage but will aggressively exclude every indication or suggestion which might conceivably rescue the second marriage from invalidity."

In support of this statement the cases of *Fenton* v. *Reed* (4 Johns. 52), *Caujolle* v. *Ferrie* (23 N. Y. 90) and other cases were cited. In nearly all of those cases the marriage itself was questioned as in the *Caujolle* v. *Ferrie* case. In that case Ferrie formed an intimacy with a servant girl, who lived next door. Ferrie's father objected to his marrying her on account of their inequality of social position and as a result he lived with her for some time without the proper marriage ceremony. An effort was made to consummate a marriage because their intention was " published aloud, by word of mouth, before the outer and principal door of the Maison Commune of St. Girons," but the actual record of their marriage was not found.

In *Fenton* v. *Reed* (*supra*) the question of marriage was again raised and it was held that a marriage may be proved from cohabitation, reputation, acknowledgment of the parties and other circumstances from which a marriage may be inferred. "A contract of marriage made *per verba de presenti* amounts to an actual marriage and is as valid as if made *in facie ecclesiæ."*

In *Hynes* v. *McDermott* (91 N. Y. 451) Judge ANDREWS said, " the presumption of marriage from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy."

In view of the present statute it seems doubtful if the extravagant language used in some of the earlier cases is applicable to the question to be decided here. In fact in *Matter of Findlay* (253 N. Y. 1) Judge CARDOZO has very recently said, " the presumption does not consecrate as truth the extravagantly improbable which may be one, for ends juridical, with the indubitably false."

Section 6 of the Domestic Relations Law (as amd. by Laws of 1915, chap. 266) provides " that a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:

" 1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery of such person; provided, that if such former marriage has been dissolved for the cause of the adultery of such person, he or she may marry again in the cases provided for in section eight of this chapter and such subsequent marriage shall be valid;

" 2. Such former husband or wife has been finally sentenced to imprisonment for life;

" 3. Such former marriage has been dissolved pursuant to section seven-a of this chapter." *

From the evidence produced I am convinced that the marriage between Celestia Perry and William E. Cole had never been annulled or dissolved and was in full force and effect at the time she married Martin Wright; that William E. Cole had not been sentenced to prison for life; and that he had not absented himself for five successive years then last past without being known to Celestia Cole to be living during that time; and that Celestia Perry had not been married previous to her marriage to William E. Cole.

It is my conclusion, therefore, that the marriage between Martin Wright and Celestia Martin Cole was absolutely void.

" Where a marriage is void, although the Legislature has authorized the court in the interest of the public, to enter a formal decree declaring it void, it is void " from its inception " without any decree of the court " and for all purposes. (*McCullen* v. *McCullen*, 162 App. Div. 599; *Earle* v. *Earle*, 141 id. 611.)

It is contended by those claiming the legitimacy that subdivision 6 of section 1135 of the Civil Practice Act applies. Subdivision 6 of said section provides as follows: " If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or

---

* § 6, subd. 3 was amd. by Laws of 1922, chap. 279.— [REP.

that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract.  If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

Henry Wright, a brother of Martin Wright, a man about sixty years of age and whose testimony seems worthy of belief, testified that he learned of the former marriage of Celestia before she married his brother Martin.  He testified that he talked with his brother Martin about her former marriage; told him that she did not have a right to get married, for the reason she had a living husband, and Martin said, " He had gone so far, he would go on since Mr. Perry (her father) said he didn't think there would be any trouble."  It further appears from the evidence that Celestia had a child, when she married Martin Wright, which went by the name of Joseph Martin and which child went to live with Martin Wright after his marriage.  The marriage license discloses the fact that both Martin Wright and Celestia stated in their application that it was the first marriage for each of them.  It cannot be contended, therefore, that the marriage of Martin Wright to Celestia Martin Cole was contracted by Martin Wright in good faith, with full belief that the former husband of Celestia was dead or that the former marriage had been annulled or dissolved, or that he had no knowledge of such former marriage.

Marriage in good faith and in full belief that a former marriage had been dissolved by a valid decree of divorce is not sufficient to legitimize a child of that marriage and entitle it to succession to real and personal property when in fact there has been no valid decree of divorce.  (*Baylis* v. *Baylis*, 207 N. Y. 446.)

It would be more pleasing to adjudge that these children are legitimate children, but the evidence produced has been strong, distinct, satisfactory and conclusive and I feel obliged to find that Clifford Wright, Teresa Wright and Mervel Wright are illegitimate children and not entitled to share in the estate of Harry L. Wright.

A decree may be entered accordingly.