FAIRY BRACY, Petitioner, *v.* TAFT BRACY, Respondent.

Domestic Relations Court of City of New York, Family Court, Queens County, April 20, 1938.

*Alice Trubin* and *Sol Cooperman, Assistant Corporation Counsels,* for the petitioner.

*Morris Himmelfarb,* for the respondent.

PANKEN, J. The jurisdiction of the Family Division of the Domestic Relations Court of the City of New York, conferred by State Legislature, is: " To hear and determine all proceedings to compel the support of a wife, child or poor relative." (§ 91, subd. 1.)

The court in the exercise of its jurisdiction may order support of a wife or child or stepchild, etc. (§ 92, subd. 1.)

The petition herein is for an order requiring the respondent to support his dependents under the cited sections of the Domestic Relations Court Act.

The testimony in so far as it is to affect the determination of the issues herein involved is substantially as follows:

The petitioner was married to the respondent on May 27, 1929, in Queens county, N. Y. There is one living child, issue of said marriage. At the time this marriage was solemnized the petitioner was the mother of four other children. These children were born to the petitioner and one Isaac or Freeman Collins. Isaac or Freeman Collins was married to the petitioner on the 10th of November, 1918, in the State of South Carolina.

In 1924 or 1925 the Collins marriage went on the rocks. Isaac or Freeman Collins left his wife and children. It was after that that the petitioner came to the city of New York and met Taft Bracy and was married to him.

The respondent disclaims liability for the support of his wife and his stepchildren, stating that the marriage which was entered into in May, 1929, was without force or effect. It was void. It was so, he contends, because at the time the petitioner had entered upon the marriage contract with him she then had a husband living. In support of this contention he offered testimony from his brother, a minister, two other reatives and one stranger to him but a relative of Isaac or Freeman Collins.

Obviously, if the petitioner was the wife of another at the time the marriage contract was entered into with Bracy, the marriage between her and the respondent is a nullity.

The basis upon which an order may be entered by this court for the support of either the petitioner or the alleged stepchildren is that the marriage between her and Bracy is valid. It follows, therefore, that this court, though it may not annul a marriage or divorce husband and wife or enter decrees of separation between husband and wife, as incident to the power vested in it to order the support of dependents, such as wife, children or stepchildren, may inquire into the legal status of the relationship which is invoked in support of a petition as is herein involved.

The legal relationship, the basis of which is the power of this court to order the support for a dependent wife, child or stepchild, must be established by competent proof. In the absence of such proof, it would manifestly be unjust and unlawful to require a person not in law chargeable with support of alleged dependents to so do.

The evidence before me is that the petitioner had heard that Isaac or Freeman Collins departed this life. She made no effort to ascertain whether that was a fact or not. She married the respondent either four or five years after the disappearance of Isaac or Freeman Collins.

It is axiomatic that when a person invokes the provisions of a statute that statute must be strictly construed. Under the so-called " Enoch Arden " law, a spouse having disappeared for a period of five years, with no information as to whether he is alive or dead, may be adjudged dead and so release his or her spouse. The so-called " Enoch-Arden " law cannot be invoked until a period of five years has elapsed after the disappearance of a spouse. The testimony in the case before me is quite vague and unsatisfactory as to whether five years had elapsed from the time Freeman Collins had left the petitioner and her marriage to the respondent.

The court should, if it were convinced that Isaac or Freeman Collins is no longer among the living and that he was not among the living at the time of the marriage between the petitioner and respondent, sustain the marriage between them on the basis upon which this application rests, and make order for the support of the respondent's dependents.

There is no presumption of death; the contrary is the fact. The law presumes that a person continues to live rather than he had died. Death must be proved by competent evidence. Life is presumed to continue until death is established. A mere statement that one has heard of the death of one's spouse is not adequate proof to establish death of the spouse. The presumption of life in such circumstance continues.

In the case of *Duke of Cumberland* v. *Graves* (9 Barb. 595, 608) it is held: " That rule is, that the proof of the death of a person, known to be once living, is incumbent upon the party who asserts his death; for it is presumed that he still lives until the contrary is proved. (*Wilson* v. *Hodges*, 2 East's Rep. 312.) " And the opinion adds: " The presumption of death, from any lapse of time which the evidence in this case could justify, would only apply where the individual alleged to be dead, had left the place of his domicile and had not been heard from for seven years or more."

In the case before me there was an absence of some four or five years from the domicile in South Carolina. The testimony, however, discloses that the first spouse was alive some twelve or thirteen years after his disappearance.

The rule that the presumption that one continues to live until death is proved has been laid down and followed in protection of the known living as well as of the absentee.

That is sound common sense.

Woodrow Wilson made this enlightened statement: " If your laws do not fit the facts, the facts are not injured, the law is damaged; because the law unless I have studied it amiss is the expression of the facts in legal relationships. Laws have never altered the facts, laws have always necessarily expressed the facts." (New Freedom.)

Paraphrasing the late President of the United States, I would say that good law reflects sound common sense. That law which is not responsive to common sense is bad and in course of time is repealed or becomes obsolete by disuse.

The court is mindful of the fact that there is a child living, issue of the marriage. Under section 1135 of the Civil Practice Act, if a marriage be declared null on the ground that a former husband or wife of one of the parties to the marriage was living, the former marriage, therefore, being in force, and that the subsequent marriage was contracted by at least one of the parties thereto in good faith, the child of such marriage is to be deemed a legitimate child of the parent who at the time of the marriage had competence to contract same.

It may well be that in the case before me both parties believed themselves competent to contract the marriage.

I find as a matter of fact that John C. Stallings had, in the fall of 1937, accompanied Freeman Collins to the home of the petitioner where the said Collins had talked to his children. I find further as a matter of fact that the petitioner knew Freeman Collins when he visited her in 1937. Freeman Collins being alive in 1937 was also alive in 1929. The petitioner, therefore, had no capacity to enter into a valid marriage contract with Taft Bracy, the respondent.

The marriage is a nullity and there is no liability on the part of the respondent in law to support either the petitioner or the children fathered by Freeman Collins.

There is liability on the respondent, both in law and in morals, to support his child, the issue of this marriage.

I question in my own mind whether the Domestic Relations Court of the City of New York had the power to make an order for the support of the child in question. Subdivision 6 of section 1135 of the Civil Practice Act, in part, says: " A child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

The intent of the Legislature is quite apparent.

I find that in so far as the respondent is concerned he was competent to enter into the marriage contract. Under subdivision 6 of section 1135 of the Civil Practice Act, the child born of this marriage is deemed to be legitimate. That being the fact, the Domestic Relations Court of the City of New York has the power to require the respondent to support his child. To find otherwise would require one of two things to be done before provision for maintenance of this child can be made:

1. A proceeding in the Supreme Court to declare the child legitimate; that, in my judgment, is not necessary since the Legislature in enacting section 1135 of the Civil Practice Act expressly provides that a child born under circumstances such as is in this case prevail to be legitimate. The same subdivision of section 1135 provides as follows: " If both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

It is evident that the Legislature intended a definite finding by a court of competent jurisdiction as to the legitimation of a child only in instances where neither parent was competent to enter upon a valid marriage contract.

2. A proceeding in the criminal courts of our jurisdiction compelling the respondent to provide for his child as an illegitimate one. Such proceeding would brandmark an innocent youngster as an illegitimate child. It was the intention of the State Legislature to avoid such branding of a child where one of the parents was competent to enter upon a valid marriage contract. The expressed language of the statute permits of no other construction; in fact, compels finding that the child is legitimate. Hence this court has the power to require its support by its father.

Accordingly, order is herein made requiring the respondent to contribute five dollars weekly for the support of his child. Settle order on notice.