**Dennis Paul ROSTON and Robert Ralph Roston by Josephine Roston, their next friend, Plaintiffs,**

**v.**

**Marion B. FOLSOM, Secretary of Health, Education and Welfare, Defendant.**

United States District Court
E. D. New York.
Dec. 31, 1957.

114

David DuVivier, New York City, The Legal Aid Society Attorney, for plaintiffs.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Eastern District of New York, L. Donald Jaffin, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for defendant.

BRUCHHAUSEN, District Judge.

The plaintiffs and the defendant move for summary judgment, pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A.

The action was brought by the plaintiffs, the alleged children of a deceased wage earner, for a review of the decision of the Federal Social Security Administrator, denying their application for children's insurance benefits, as provided by the Social Security Act, Section 205(g), 42 U.S.C.A. § 405(g).

The facts herein are not in dispute. It appears that the wage earner, Meldrim Roston, married Ottolie Blaney on November 21, 1922, that they separated in or about the year 1937, but that the marriage was never legally dissolved, that the wage earner married Josephine Cepeda in New York City on May 26, 1943, that the plaintiffs, Dennis and Robert Roston, were born of the latter union, that the wage earner knew that the said Ottolie Blany Roston was living and recognized an obligation toward her and contributed to her support up to the time of his death and that he died on June 22, 1955 and was then domiciled in New York State.

The plaintiffs, the alleged children of the deceased wage earner claim they are entitled to insurance benefits under Section 216(h) (1) of the Act, 42 U.S.C.A. § 416(h) (1), which provides that in determining whether applicants are the children of such wage earner, the Administrator "shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual * * * was domiciled at the time of his death."

It is conceded that the said individual was domiciled in the State of New York at the time of his death.

Under New York law, children of an intestate, are entitled to share in his estate. The administrator was called upon to determine whether the infant plaintiffs were the children of the insured within the meaning of the act. The pertinent New York State law is subdivision 6 of Section 1135 of the Civil Practice Act of that State which is as follows:

"The following provisions govern the effect of declaring a marriage void or annulling a voidable marriage upon the legitimacy of children of the marriage: * * * (6). If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

The said Section 1135(6), Civil Practice Act, does not, by its terms, confer legitimacy upon the children of every void or voidable marriage. It specifies two categories for determining legitimacy. The first or mandatory portion of the statute provides that the Court, under the particular circumstances therein stated, must declare the legitimacy of a child or children of a void or voidable marriage such as is therein described. While the plaintiffs do not contend that the mandatory provision applies to them, it seems essential that we consider the entire statute in order to arrive at an understanding of the New York cases construing it.

### The Analysis and Consideration of the Mandatory Portion of Section 1135(6), Civil Practice Act.

The mandatory portion of Section 1135(6), Civil Practice Act, provides in substance that in a proceeding wherein a court declares a marriage void or annuls a voidable marriage a child of such a marriage shall be deemed the legitimate child of the parent who at the time of such marriage was competent to enter into it, provided that the following elements exist, i. e.:

1. That the said marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living.

2. That the former marriage was then in force.

3. That the judgment determine that the subsequent marriage was contracted by at least one of the parties thereto in good faith and with the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage.

■ It is clear that this mandatory portion of the statute is inapplicable to the case at bar and that the plaintiffs could not claim that they were the lawful children of the wage earner thereunder for the reason that he was not competent to enter into the subsequent marriage.

### The Analysis and Consideration of the Discretionary Portion of Section 1135(6), Civil Practice Act.

The discretionary portion of Section 1135(6), Civil Practice Act, being the last sentence thereof, provides that in a proceeding wherein a court declares a marriage void or annuls a voidable marriage, and wherein it appears that either or both parties to such marriage were incompetent to contract, such court may decide that a child of such marriage is the legitimate child of such an incompetent.

### The Plaintiffs' Contention.

The plaintiffs contend that the Administrator erred in not exercising his discretion in their favor under the last sentence of the statute. An examination of the opinions of the Administrator and of the Appeal Board shows that the statute was considered.

### The Power of This Court Upon a Review of the Administrator's Determination Herein.

This Court is limited upon such review and may only reverse the Administrator's determination if it concludes that there has been an abuse of discretion. Local Union No. 12, etc., v. National Labor Relations Board, 7 Cir., 189 F.2d 1, certiorari denied 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653. Furthermore, "the finding of the Administrator as to any fact, if supported by substantial evidence shall be conclusive." 42 U.S.C.A. § 405(g). Even though, upon a consideration of all of the evidence, this Court might reach a different conclusion, it is not authorized to substitute its own for the administrative judgment. Swayne & Hoyt, Ltd. v. U. S., 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659.

### An Analysis of the Decisions of the Courts of New York, Involving the Questions Herein and Related Matters.

In the case of Magner v. Hobby, 2 Cir., 215 F.2d 190, the Court held that the Administrator should make findings of the facts pertinent to a decision of legitimacy under the subject statute and particularly as to whether the wage earner entered into the subsequent marriage in good faith in the belief that the former marriages had been lawfully dissolved. While the good faith of the wage earner is a standard in the mandatory portion of the statute, it does not seem pertinent to the discretionary part thereof.

Under the mandatory portion of the statute if at least one of the parties has acted in good faith, a child of the marriage is deemed the legitimate child of the party, free to contract. If the competent party were also the innocent party, or the party in good faith, it would be contrary to natural justice for such a parent to desire to disown the innocent child. Such parent would naturally cherish the child and defend it against any charge of illegitimacy.

The former statute was very rigid. Cf. Baylis v. Baylis, 207 N.Y. 446, 101 N.E. 176. The innocent party was awarded custody, and he was entitled to appoint a guardian of the person, by will, but legitimacy was declared as to the competent parent, and children born of the void marriage were entitled to equal intestate sucession with the other legitimate children of the competent parent.

The former statute clearly differentiated between innocence and competence. Unfortunately, both the former and present statutes contain the phrase, "without any knowledge on the part of the innocent party of such former marriage." If a party to a void marriage had no knowledge of the other party's prior marriage, the competent party must be deemed innocent under those circumstances. But competence does not necessarily indicate innocence. Taylor v. Taylor, 63 App.Div. 231, 71 N.Y.S. 411, affirmed 173 N.Y. 266, 65 N.E. 1098; Sorensen v. Sorensen, 219 App.Div. 344, 220 N.Y.S. 242. Neither does incompetence necessarily indicate guilt. Brown v. Brown, 282 App.Div. 726, 122 N.Y.S.2d 411. See In re Tombo, 164 App.Div. 392, 149 N.Y.S. 688, for the erroneous interchange of the words "competent" and "innocent."

The award of custody of the child to the innocent, though incompetent parent, if such were the case, seems a logical and reasonable sequence. Even if a party were competent to marry, but knew that the other party were not, the former should not obtain custody of a child born of the void marriage. In this connection, the Court in Kaufman v. Kaufman, 177 App.Div. 162, 163 N.Y.S. 566, 569, said:

> "In the case at bar it was not only pleaded, but proved and found, that all the defendant did with respect to changing her residence and obtaining a divorce was instigated by the plaintiff. Although there is no issue of the marriage, it seems to me it would be unconscionable to allow the plaintiff, after thus inducing defendant to obtain a divorce and to marry him, and after living

with her for such time as it pleases him, to have the marriage annulled and to be released by judicial decree from all responsibility thereunder on the ground that the divorce was invalid." Cf. Hall v. Hall, 139 App. Div. 120, 123 N.Y.S. 1056.

The incidence of divorce in this country no doubt prompted a relaxation of the statute. In fact, as the Court stated in Baylis v. Baylis, supra, 207 N.Y. at page 450, 101 N.E. at page 178, its opinion therein was written "solely for the purpose of calling attention to the subject." As a result of that decision, the Legislature by the enactment of Chapter 202, Laws of 1919 provided that legitimacy could be declared if one of the parties was in full belief "that the former marriage had been annulled or dissolved," which phrase emanated from the said opinion. The Amendment added several additional matters.

Flexibility is emphasized in the present statute, as is indicated by the provision therein empowering the Court to award custody "as justice requires." New York Civil Practice Act, Section 1140. Pursuant thereto, even a guilty party may obtain custody. Radeff v. Radeff, 272 App.Div. 582, 74 N.Y.S.2d 749. Under subdivision 8 of Section 1135, the Court, when declaring legitimacy, may limit the effect of legitimization "to rights other than succession to real and personal property of a deceased parent."

Such flexibility is evidenced by the last sentence of Section 1135(6) of the Civil Practice Act hereinabove called the discretionary portion thereof. Legitimacy may now be declared as to the incompetent parent. So far as this portion of the statute is concerned, it would seem that any evidence of bad faith would be relevant, for if a party to a void marriage had the audacity to bring an innocent child into the world in bad faith under the guise of legitimacy by a ceremonial marriage, it is readily understandable how a judge, exercising his discretion, would make such a party, and his estate, responsible to such child. Of course, there could not be interfer-

ence with the more paramount right of a prior spouse. In re Bruington's Estate, 160 Misc. 34, 289 N.Y.S. 725. But if, for example, the first spouse died, and the second spouse brought an action to annul the marriage because of the impeding first marriage, the Court might well decree that the children born of the second marriage were the legitimate children of the incompetent spouse, particularly if said incompetent spouse had acted in bad faith. On the other hand, if said incompetent spouse had acted in good faith, and the second spouse, bringing the action, were competent, but had acted in bad faith, it is readily understandable that a court might cast the entire burden upon the guilty, though competent, parent.

However, the Administrator applied the subject statute in accordance with the ruling in Magner v. Hobby, supra. He made a finding of bad faith and denied recovery. The finding is overwhelmingly supported by the record.

It is doubtful whether the Administrator, in determining New York beneficiaries under the Social Security Act, should take into consideration Section 1135(6) of the Civil Practice Act, particularly the discretionary portion thereof. A brief dissent by Judge Swan in Magner v. Hobby, supra, so indicates.

An action to annul a marriage is essentially equitable. Berry v. Berry, 130 App.Div. 53, 114 N.Y.S. 497; Brown v. Brown, supra. An equitable determination, of necessity, is governed by the facts and circumstances. It would seem that the judge presiding in the annulment proceeding would be the only one qualified to work out a proper solution in this complicated field. He could, with all of the evidence before him, weigh all of the factors, and determine whether the bigamy was innocent, or the result of stupidity, deceit or malevolence, in each of which instances, his decision might vary.

The writer of the opinion on the administrative appeal questions whether a declaration of legitimacy may be lawfully decreed after the wage earner's

death. Section 1134 of the Civil Practice Act provides that either party may bring an action to annul a marriage only during the lifetime of the other, but it also provides that the former spouse of the impeding marriage can bring the action at any time. In the case at bar the annulment proceeding, in effect, is being brought after the wage earner's death, but by a party to the void marriage, not by the former spouse of the impeding marriage.

As a matter of public policy it seems preferable that annulment proceedings be brought as soon as possible to avoid further harm. A bigamous marriage is odious by common consent of nations. Earle v. Earle, 141 App.Div. 611, 126 N.Y.S. 317. The Court, 126 N.Y.S. at page 320, said:

"Although the marriage between the parties was void without any decree of a court, yet the importance to society of having such questions judicially determined, and not left to depend upon proof of material facts at a time when it might be difficult to make such proof, has induced the Legislature to authorize a decree of annulment in such cases."

Very often, children of the impeding marriage are involved. Their rights deserve prompt protection. It would be unfair to confront the true spouse of the impeding marriage with other distributees after the death of the incompetent party to the subsequent void marriage. On the other hand, it is understandable how the prior spouse should be entitled to bring such an action after death. The prior spouse is not continuing a wrong, usually has committed none, and very often either does not know of the subsequent void marriage and/or is unable to locate the spouse who has subsequently entered into a void marriage so as to institute a proceeding to set the same aside.

The prior spouse is protected by a valid marriage contract. If the trend in the law today is to augment the grounds for severing the marriage bond, conversely, the law should require that such severance be effected by due process of law, and most meticulously, in that a special kind of contract is involved.

It is preferable that prospective parties to a marriage contract become better acquainted before entering into a contract that may, for lack of it eventuate in a void marriage, and if the contract should be void, it would be far better to encourage its severance as soon as possible, rather than to enlarge upon the evil.

The case of Magner v. Hobby, supra, cites Bloch v. Ewing, D.C.Cal., 105 F. Supp. 25, as authority for the rule that the Administrator should have considered Section 1135(6) of the New York Civil Practice Act in determining beneficiaries under the Social Security Act. Bloch v. Ewing, supra, quotes from Barker v. Barker, 92 Misc. 390, 156 N.Y.S. 194, 195, to indicate the injustice of permitting the illegitimate child of a bigamous marriage to be declared legitimate when the parent brings an action while he is alive, and of not permitting the child to obtain such an adjudication, in the Surrogate's Court, or otherwise, after the parent has died.

Aside from the validity of the argument, Barker v. Barker, supra, specifically points out that a different situation would be presented if the estate of the guilty parent were involved. The court thus distinguished Baylis v. Baylis, supra.

While Bloch v. Ewing, supra, indicates that there are two conflicting views in New York State as to whether Section 1135(6) may be considered in a proceeding other than the original annulment proceeding, actually the two views are consistent, and in keeping with the distinction which the Barker case, supra, makes in the analysis of the Baylis case, supra.

In one of the situations the collateral court was considering that portion of Section 1135(6) wherein a declaration of legitimacy is mandatory and the parent as to whom legitimacy was sought to be declared, not only was competent, but also innocent. It would be contrary to

human nature for a competent parent, particularly when innocent, to desire disinheritance of a child thought to be legitimate, and it can be readily understood how a judge in a collateral court, particularly a Surrogate whose function it is to fulfill the decedent's intentions, would so hold, especially in situations wherein legitimacy is mandatory. Even if the competent parent were not innocent, it is comprehensible that legitimacy should still be declared by a collateral court where the statute makes such declaration mandatory, for the wrongdoer, or the estate of such wrongdoer, should be estopped from denying children when there is no legal excuse for doing so.

In the other situation competence was lacking and the collateral court concluded that it would exceed its jurisdiction in performing the discretionary functions allowed by the last sentence of Section 1135(6). The true and lawful spouse, or children as the case may be, of the impeding marriage were entitled to prior consideration. If the incompetent spouse also happened to be innocent, it is even more understandable how the collateral court would not intervene and perform discretionary functions permitted by Section 1135(6) in an annulment proceeding. Even if the incompetent spouse were also guilty, those connected with the impeding marriage are still entitled to protection.

The aforesaid distinction has been observed in all of the cases, i. e. when legitimacy is discretionary under Section 1135(6) the collateral court has not considered said section. Cf. Anonymous v. Anonymous, 174 Misc. 906, 22 N.Y.S.2d 598; compare, Bracy v. Bracy, 167 Misc. 253, 3 N.Y.S.2d 827; Cf. also, In re Biersack, 96 Misc. 161, 159 N.Y.S. 519; Hiser v. Davis, 234 N.Y. 300, 137 N.E. 596.

Bracy v. Bracy, supra, cited in Bloch v. Ewing, supra, as authority for collateral consideration of Section 1135(6), actually demonstrates that there are two consistent views, wherein the court stated, 3 N.Y.S.2d at page 832, after holding that the Domestic Relations Court could consider Section 1135(6) in a support proceeding, that " * * * the Legislature intended a definite finding by a court of competent jurisdiction as to the legitimation of a child * * * in instances where neither parent was competent to enter upon a valid marriage contract." It would have been more accurate to use the words "either or both parents," since the above quotation follows that part of the statute wherein the words "either or both" are used, but in any event, even Bracy v. Bracy, supra, recognizes that there are instances wherein legitimacy may be declared solely in the annulment proceeding.

Smith v. Smith, 179 Misc. 19, 37 N.Y.S. 2d 137, cited in Bloch v. Ewing, supra, as authority for collateral consideration deals with subdivision 5 of Section 1135, wherein there is no discretion.

Bloch v. Ewing, supra, indicates that the holding against collateral consideration in Anonymous v. Anonymous, supra, is dicta. Actually such a holding was the precise ratio decidendi. It is true that the harshness of the decision was capable of being rectified in a further proceeding, but it could hardly be said that such a decision was even de minimis, since the proceeding involved a support order and time was of the essence. It is indicated that the learned jurist may have been less legalistic if the escape of a subsequent action were not open to the litigants, but an opinion by the same judge in Castellani v. Castellani, 176 Misc. 763, 28 N.Y.S. 2d 879, indicates how conscientiously he labored over these concepts.

As to dicta, there is strong language, though not a holding, in Hiser v. Davis, supra, that legitimacy as to even the competent parent may not be decreed other than in the original annulment action, wherein the court said, 234 N.Y. at page 307, 137 N.E. at page 598:

"It also may be debated whether relief can be given in this present action under the Code provision in question. Personally I do not believe it can be. Under the common law and every controlling rule that I am aware of, the child, if illegitimate,

120

will be illegitimate unless this condition can be cured under the specified provision of the Code, and that provision of the Code expressly requires that the question of good faith of the parents must be settled and the decree of legitimacy made in the annulment action."

That case merely held that the original annulment action could be reopened, and legitimacy declared and that such a declaration would be valid in any court and could not be collaterally attacked.

The only case which seems to boldly transgress the formula and collaterally declare that the child is the legitimate off-spring of the incompetent, and guilty, parent is a Surrogate's Court decision in In re Grossman's Estate, 139 Misc. 646, 248 N.Y.S. 791, and that case merely decrees legitimacy without even discussing the difficulty. In contrast, two other New York State Surrogates have reached the opposite conclusion, after due consideration. In re Crook's Estate, 140 Misc. 721, 252 N.Y.S. 373; In re Wright's Estate, 137 Misc. 391, 243 N.Y.S. 538.

It seems unconscionable to encourage or even permit a beneficiary to wait until after the death of the bigamist parent, who was abhorred during life, to seek a declaration of legitimacy as to said parent, after death, when it is then discovered that there is something of value in the estate. Meanwhile, despite the protective statute, no action has been taken respecting the void marriage. As stated in Hiser v. Davis, supra, 234 N.Y. at page 308, 137 N.E. at page 599 (referring to Section 1135(6)), " * * * the rights which the court was permitted to protect in such an action were of a peculiar nature. They were not so much the rights of the people who were parties to the action as the rights of the infant."

Social Security has the ear marks of a benefit rather than a right. Even the legitimate children of a valid marriage have no preemptive right to Social Security. They have done nothing to earn these benefits and their rights, if any, are only such as a benevolent, and perhaps over-generous, government has bestowed upon them by statute. Even the wage earner, through whom they claim, paid nothing extra for these benefits. A fortiori, the illegitimate children of a bigamous marriage should have less claim of right.

It is most unlikely that Congress intended that the Social Security Act be affected by Section 1135(6) of the Civil Practice Act. Said section is not a part of the basic laws of intestacy of New York State. If New York State intended to expand its concept of children, for Social Security purposes, to include the illegitimate children of a bigamous marriage, it would be overreaching its sister states and obtaining extra social security benefits for its citizens, without additional cost.

The said section, in its original and present form, was enacted long before Social Security was ever contemplated, and its purpose was to protect the rights of children of a void marriage by preserving the property and estate of the competent party. Hiser v. Davis, supra. It is plain that it was enacted without contemplating the advent of Social Security.

It is beyond reason to refer to Social Security benefits as property rights to which one might succeed. Cf. Bell v. Terry & Tench Co., 177 App.Div. 123, 163 N.Y.S. 733; Middleton v. Luckenbach Steamship Company, 2 Cir., 70 F.2d 326, 327. Those cases involved similar statutes, the former the New York Workmen's Compensation Law, McKinney's Consol. Laws, c. 67, and the latter the Federal Death on the High Seas Act. Both of them were concerned with the rights of illegitimate children to share in the recovery. The cases reached opposite conclusions, the New York case stating, in effect, that if the Legislature meant to provide for illegitimate children, it would have, or should have, said so.

The New York case should here control for the aforementioned Social Security Act directs that the Secretary act pursuant to local law, while in the Luckenbach

case, supra, the court was concerned with a federal statute, 46 U.S.C.A. § 761 et seq. The latter case uses broad, general language, such as, 70 F.2d at page 330:

"Humane considerations and the realization that children are such, no matter what their origin alone might compel us to the construction that, under present day conditions, our social attitude warrants a construction different from that of the early English view."

That case, however, proceeds to point out at the same page 330 that under the Federal Death Act, "recovery is for fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought. * * * 'The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased.' "

This is an administrative proceeding— no other action has been instituted. There has been no deprivation of the reasonable expectation of pecuniary benefits, for the wage earner apparently died of natural causes. Even if he had not, the world and particularly the United States Government, was not indebted to him. Furthermore, benefits under the Act are not based upon the life expectancy of the insured.

■■■ Social Security is in the nature of insurance. The terms "insured," "insurance" and "beneficiary" are used throughout the act. The retirement benefits are similar to an annuity; the survivor benefits resemble insurance. Reference to the local laws of intestacy are common in annuities, pension plans, insurance policies and the like where no named beneficiary appears, more for the sake of orderliness and defining of beneficiaries, rather than creating them.

Under Social Security, benefits are unequal, depending upon the number of children a wage earner has. The basic law of intestate succession as to personal property in New York State is Section 83 of the Decedent Estate Law. Subdivision 13 thereof permits illegitimate children to inherit only from their mother, and then only if she has no other lawful issue. Battalico v. Knickerbocker Fireproofing Co., 250 App.Div. 258, 294 N.Y.S. 481.

■■■ Insurance is for the benefit of the insured, for his peace of mind as to the future well-being of those for whom he seeks protection. It is difficult to see why one who has fathered an illegitimate child through a bigamous marriage should have more peace of mind about the future well-being of his descendants than one who may have brought an illegitimate child into the world, but at least has not committed a wrong, such as bigamy, especially when the assured pays nothing extra for such benefit. Bigamy is the greater offense when a child is born for it involves two wrongs. Cf. In re Wood's Estate, 203 Misc. 809, 119 N.Y.S. 2d 110, appeal dismissed 282 App.Div. 1093, 126 N.Y.S.2d 927.

The Government should not be called upon to compound this wrongdoing and give greater protection, without cost, to the illegitimate child of a bigamous marriage than to a child born out of wedlock. "To recognize these children of a bigamous marriage as heirs and distributees would be contrary to the law and the public policy of this (New York) state." In re Bruington's Estate, supra, 289 N.Y.S. at page 731.

To extend Social Security benefits, gratis, to illegitimate children, particularly illegitimate children of a bigamous marriage, would be an injustice to those who attempt to lead a virtuous life, and who pay equally for the coverage, and against public policy.

Plaintiffs' motion for summary judgment should be denied; defendant's motion should be granted, and the order of the Administrator confirmed. Submit order.