Linda DE SOUCEY, Gerald De Soucey,
by Myrtle J. De Soucey, their next
friend, Plaintiffs,

v.

Arthur S. FLEMMING, Secretary of
Health, Education, and Welfare,
Defendant.

United States District Court
S. D. New York.
Sept. 20, 1960.

Lawrence G. Greene, New York City, for plaintiffs.

S. Hazard Gillespie, Jr., U. S. Atty., for Southern Dist. of New York, New York City, for defendant, Joseph P. Altier, Asst. U. S. Atty., New York City, of counsel.

LEVET, District Judge.

In this action by the above-entitled infants, the plaintiffs seek to set aside the decision of the Secretary of Health, Education, and Welfare and to secure an adjudication that such plaintiffs are entitled to "child's insurance benefits" under the Social Security Act, particularly Title 42 U.S.C.A. § 416(h)(1).

The parties to the suit have made cross-motions for judgment on the pleadings. The record of the administrative proceedings has been incorporated in the government's answer.

Facts

The plaintiffs are children of the insured wage earner, Edward F. De Soucey, who died on May 29, 1955, domiciled in New York.

The records of the New Jersey Division of Vital Statistics show that the wage earner had married one Mary Goelitz on March 10, 1932. This valid ceremonial marriage lasted until Mary's death in 1954. There was no evidence of any children born of this marriage.

On January 13, 1956, one Myrtle De Soucey applied for "Survivor's Insurance Benefits" on the deceased's wage

record, claiming that some nine months after the ceremonial marriage to Mary in 1932, she had become the common-law wife of the wage earner in New York City and that this common-law marriage lasted until the wage earner's death in 1955. Myrtle also claimed that her children, the infant plaintiffs, Linda and Gerald, were the children of the deceased wage earner and were thus eligible for "child's insurance benefits."

The cohabitation of Myrtle and Edward was proved before the referee. Birth certificates indicate that Myrtle and the deceased wage earner were the parents of Linda, born in 1940, and Gerald, born in 1943.

On October 17, 1957, the referee made the following findings and conclusions:

1. The deceased wage earner and Mary Goelitz were legally wed on March 10, 1932 and that that marriage lasted until Mary's death in 1954.

2. After the death of Mary in 1954, Myrtle and the deceased wage earner entered into neither a ceremonial marriage nor a common-law marriage in a jurisdiction (New York) which recognizes such marriages. The referee concluded that Myrtle and the deceased wage earner did not enter into a valid common-law marriage in New York at a time when that state's law recognized such marriages, and that, therefore, Myrtle is not the "widow" of the deceased wage earner under New York law.

3. Plaintiffs Linda De Soucey and Gerald De Soucey are not entitled to inherit personal property from the deceased wage earner under New York law and, hence, are not entitled to Social Security benefits.

The statutes involved are as follows:

42 U.S.C.A. § 416

"Determination of family status

"(h)(1) In determining whether an applicant is the wife, husband, widow, widower, child, or parent of a fully insured or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a wife, husband, widow, widower, child, or parent shall be deemed such."

New York Decedent Estate Law, McKinney's Consol.Laws, c. 13.

"§ 83. Descent and distribution of estate of decedent

"The real property of a deceased person, male or female, not devised, shall descend, and the surplus of his or her personal property, after payment of debts and legacies, and if not bequeathed, shall be distributed to the surviving spouse, children, or next of kin or other persons, in manner following:

\* \* \* \* \* \*

"13. If a woman die, leaving illegitimate children, or the legitimate descendants of deceased illegitimate children and no lawful issue, such children or descendants inherit her real and personal property as if such children were legitimate."

New York Civil Practice Act

"§ 1135. Legitimacy of children

"The following provisions govern the effect of declaring a marriage void or annulling a voidable marriage upon the legitimacy of children of the marriage:

\* \* \* \* \* \*

"6. If a marriage be declared a nullity or annulled upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, if

it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead or that the former marriage had been annulled or dissolved, or without any knowledge on the part of the innocent party of such former marriage, a child of such subsequent marriage is deemed the legitimate child of the parent who at the time of the marriage was competent to contract. If either or both parties to such subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

It is not clear that a common-law marriage, even if valid, was entered into by the decedent and the mother of the plaintiffs. It is obvious that this issue must be determined by the facts which occurred before April 29, 1933, when such marriages became illegal. Zy v. Zy, Dom. Rel.Ct., 1939, 13 N.Y.S.2d 415.

■ To constitute a common-law marriage there must be capacity and mutual consent in present words to take each other as husband and wife. See Anonymous v. Anonymous, Dom.Rel.Ct., 1940, 19 N.Y.S.2d 229; In re Apostol's Estate, Surr.Ct., 1945, 53 N.Y.S.2d 661. It is clear that there must be an actual bona fide mutual agreement consummated by their cohabitation as husband and wife. In re Monty's Estate, Surr.Ct., 1941, 32 N.Y.S.2d 705, affirmed 1942, 289 N.Y. 685, 45 N.E.2d 334. The agreement must be at the inception of the relationship. Hines v. Hines, Dom.Re.Ct., 1954, 131 N.Y.S.2d 316.

Mere cohabitation, sexual relations, use of the same name and the fact that parties were regarded as husband and wife by others are not sufficient. Maiorana v. Salerno, Sup.Ct., 1954, 133 N.Y.S.2d 521; In re Cooke's Estate, Surr.Ct., 1949, 195 Misc. 468, 85 N.Y.S.2d 104. An agreement to marry in the future is insufficient. In re O'Neil's Estate, Surr.Ct., 1946, 187 Misc. 832, 64 N.Y.S.2d 714, affirmed 1947, 272 App.Div. 919, 71 N.Y.S. 2d 720.

■ Obviously, any acts of Edward and Myrtle after April 29, 1933, holding themselves out as husband and wife, are ineffective. Taylor v. Taylor, 1937, 164 Misc. 401, 298 N.Y.S. 912.

■ Here the facts militate against the recognition of even a de facto common-law marriage:

1. Edward was already married.

2. Myrtle testified before the referee that Edward had asked her to marry him in August 1932 and "he told me that we would be married." (SM 32.) She stated that "he liked to be married and have a family and live together." (SM 33.) "Each week it was the next week." (SM 57.) Whenever Myrtle mentioned the ceremonial marriage to Edward, "he would go off on a binge." (SM 33.) No date was set for the marriage. Myrtle said, "we just kept going on together and that is the way it was." (SM 34.) Myrtle said: "* * * we had intended being married, and whenever I said anything to him about it, he would always just keep putting it off until another time." (SM 56.)

3. Myrtle never visited Edward's relatives. Moreover, Myrtle suspected his previous marriage. She testified that she "always asked him and he always denied it." "He denied it up until I left him, [i. e., 1953]." (SM 57.)

Thus, there is ample warranty for refusing to hold that Myrtle entered into any purported common-law marriage or, if she did, that she entered into it in good faith.

Under Section 1135(6) of the New York Civil Practice Act the court is not bound to declare the children legitimate as to Edward since he was not competent to contract a marriage with Myrtle in the period between August 1932 and April 27, 1933. Magner v. Hobby, 2 Cir., 1954, 215 F.2d 190 and Bloch v. Ewing, D.C.S.D.Cal., 1952, 105 F.Supp. 25, do not apply. The reasons are clear.

*As to the discretionary part of Section 1135(6).*

There is no sound reason to disturb the refusal of the referee to entertain the discretionary portion of this section. See Roston v. Folsom, D.C.E.D.N.Y., 1957, 158 F.Supp. 112.

Accordingly, the motion of defendant is granted and the motions of plaintiffs are denied.

Settle order on notice.